[Civil No. 2523.  Filed March 14, 1927.]

[254 Pac. 481.]

In the Matter of the Disbarment of WELDON J. BAILEY, an Attorney of This Court.

Mr. John W. Murphy, Attorney General, Mr. Earl Anderson, Assistant Attorney General, for State.

Arizona Bar Association, by Mr. James E, Nelson, Secretary, *Amicus Curiae.*

Mr. John W. Ray, for Respondent.

ROSS, C. J.—In an opinion of this court, handed down on July 8, 1926 (30 Ariz. 407, 248 Pac. 29), the law of this case was determined and settled. The questions were presented-at that time by way of demurrers, general and special, challenging the jurisdiction of the court, and on all the questions raised the decision was against the contention of the respondent. The written accusations filed April 19, 1926, and against which the demurrers were directed, charged the respondent, under subdivision 7, section 2, chapter 32, Laws of 1925, with unprofessional and unethical conduct, violative of the canons and ethics of the profession of an attorney at law as adopted by the American Bar Association, in that he had theretofore collected the sum of $190.32 for his client, one Roy J. Hockrey, administrator, and had commingled such sum with, and used it as his own, and did not promptly or at all report said collection to his client. There was filed with such accusation the affidavit of Hockrey setting forth all the facts showing employment of respondent and in detail his conduct in connection therewith. The substance of this accusation is set out in our former opinion, and we will not repeat it here.

On May 21, 1926, on application of the Arizona Bar Association, an order was made allowing such association, through its officers, to appear in the case as *amicus curiae.*

On October 8, 1926, an order was made by the court appointing the Honorable John A. Ellis, a member of the bar of Arizona, as referee to take testimony.

On October 23, 1926, the Arizona Bar Association, through its officers, filed additional charges as follows:

"That the said Weldon J. Bailey was, in the year 1914, a resident of the town of Sidney, in the county of Richland, state of Montana, where he, the said respondent, engaged in the practice of law under the name of 'Wendell' Bailey, and was, on the first day of March, 1915, by the Supreme Court of the state of Montana, adjudged guilty of contempt of court for practicing law without a license, and by said court fined in the sum of $250—all of which will be found set forth in volume 156, Pacific Reporter, at page 1101 thereof.

"That thereafter, and in the year 1915, the said Weldon J. Bailey, under the name of 'Gordon W.' Bailey, was practicing law in the state of Nevada, and appears to have been a duly licensed attorney of the Supreme Court of said state of Nevada; and that on the 15th day of December, 1916, in an action filed in the Supreme Court of the state of Nevada, on or about the 30th day of December, 1915, by the bar association of that state, he, the said Weldon J. Bailey was disbarred by the said Supreme Court of the state of Nevada, all of which appears from the case reported in 161 Pacific Reporter, at page 512 thereof.

"That thereafter, and on or about the 12th day of August, 1916, the said Weldon J. Bailey was admitted to practice before the Supreme Court of the state of Alabama. . . .

"That thereafter said Weldon J. Bailey, as Weldon Jefferson Bailey, was admitted to practice on the 25th day of September, 1916, in the District Court of Appeals of the Second Appellate District of the state of California, as will appear from a certificate executed by the clerk of said court on file in the office of the clerk of this court in the matter of the admission of the said Weldon J. Bailey herein as an attorney of this court, which said admission was, by order of this

court, made and entered on the 14th day of September, 1918, on motion of Mr. Louis F. Zimmerman, a member of the bar of this court in good standing.

"That at the time of said admission, under the provisions of law then existing, no attorney at law practicing, or admitted to practice, in any other state, territory, or district of the United States, could be admitted to practice without examination, unless he could show that he had been an attorney at law in good standing in another jurisdiction for a period of three years next preceding the date of application for admission in this state.

"That the said Weldon J. Bailey was not an attorney in good standing for a period of three years in any state, district, or territory of the United States, but had been an attorney in good standing, as the term is used and understood, in the state of Alabama, for a period of two years only immediately preceding the date of his said application, and that, in order to mislead this court as to his qualifications, and to thereby gain admission to this bar, he, the said Weldon J. Bailey, forged and altered, or caused to be forged and altered, the date of his admission in the Supreme Court of the state of Alabama by changing the figures '1916' to '1906,' all of which was deliberately done and performed for the sole and deliberate purpose of misleading this court as to his qualifications and gaining admission to the bar of this state, when, as a matter of fact, he, the said Weldon J. Bailey, then and there well knew that he was not entitled to admission to the bar of this state under the law then existing relative to admission of attorneys at law before this court."

To the accusation of unethical and unprofessional conduct in not reporting to Hockrey that he had collected the $190.32, respondent entered a general denial after the demurrer was overruled.

To the accusation of practicing law in Montana without a license, he answered admitting that he had been fined as stated, but denied that he was practicing law or that he went under the name of Wendell Bailey; stated he was only an apprentice in the law

office of another lawyer; that he did not go into court to try any case or appear in court as attorney; but that some evil-disposed person objected to his acts, and brought contempt proceedings against him under the name of Wendell J. Bailey.

To the accusation that he was disbarred in Nevada in 1916, he answered (in substance): "Respondent knows nothing about that matter save as shown in the reported opinion." At all events he states it was several years before he was admitted to practice in Arizona, and, for aught that appears in the accusation, such disbarment proceeding was known to this court and investigated by it before respondent was admitted in September, 1918, and is therefore *res judicata*.

To the last accusation, charging respondent with procuring his admission in Arizona by fraudulently altering and changing the date of his license to practice in Alabama from 1916, the true date, to 1906, in order to make the statutory showing of "good standing and active practice for at least three years last past," respondent says he made his application for admission on his California license, and was admitted on such license and a letter from a judge of a court in California; that such license showed on its face that he had not been a member of the California bar for three years before he was admitted in Arizona; that he was not aware of the statutory rule requiring an applicant for admission in Arizona to show he had been in active practice for at least three years last past. We quote part of respondent's answer as follows:

"Respondent says that he did not alter or forge, or cause any other person to alter or forge or change, the date of the certificate of respondent's admission in the state of Alabama. That respondent did not have such certificate in his possession, and never has had same in his possession, and did not file same at

the time of his application for admission or at all, nor did he make any representations regarding that matter at that time or at all. That respondent has never contended or represented to anyone that he was licensed or admitted in the state of Alabama in 1906, but has always and to everyone he has freely admitted and stated that he was admitted in Alabama in 1916, which was less than three years before he was admitted in this court in 1918, as shown by its records. So respondent says that the charge made that he did or procured another to alter, forge, or change the certificate from the Supreme Court of Alabama from 1916 to 1906 is utterly untrue.

"Pleading the facts, respondent says that, when he concluded to ask for admission in this court, he wrote to the clerk of the Supreme Court of Alabama for a copy of his admission therein, and asked that the same be sent direct to the clerk of the Supreme Court here in this court, and the same was done, and that the said certificate was never in respondent's possession at all, and, as he now recalls the matter, was not here or in court at the time of his admission, and he knows that the same was not used or shown on that occasion, and that he did not know of the error in the date till some time in this year of 1926."

He also pleads the five-year statute of limitation as a bar to the accusations filed by the Arizona Bar Association.

On January 19th, the referee having theretofore taken the testimony of witnesses for the prosecution and the respondent, and having filed his report thereof and it appearing that both sides were ready, the case was set down for trial on January 28, 1927, and on said day, the respondent not appearing either by his attorney or in person, the former being engaged at the time in a trial in the superior court of Maricopa county, and the latter being in Long Beach, California, according to a telegram shown to this court on the following day, and "wholly physically and financially unable to appear," the Attorney General and James E. Nelson, an attorney of this bar acting for the Ari-

zona Bar Association, thereupon introduced their evidence, and the evidence taken by the referee in behalf of respondent was also introduced, whereupon the case was ordered submitted.

We will not state in detail the evidence bearing upon the several accusations against the respondent, but will give a statement of the ultimate facts as shown by the evidence, and to that end will take up the accusations in the order heretofore set out.

In the early part of 1921 one George Frederick Bowland, a disabled veteran, died in the government hospital at Tucson, leaving as his whole estate a claim against the United States for compensation due him. Roy J. Hockrey, a resident of Phoenix, Arizona, and a half-brother of deceased, employed the respondent to assist him in collecting such compensation. Under the respondent's direction and advice Hockrey made application, in April, 1921, for letters of administration in Pima county, Arizona, in which county Bowland died, and to pay the court costs and the expenses of a surety bond gave respondent $25. Letters of administration having issued, proof of the claim was made against the United States in favor of Hockrey as administrator of Bowland's estate, and forwarded by respondent to the Veterans' Bureau at Washington, D. C., for audit and allowance. In due course and some time in the latter part of 1921, respondent received a letter from the Treasury Department that the claim had been allowed for $190.32, and at or about the time of its receipt showed it to Hockrey. On January 28, 1922, respondent received from the Treasury Department a draft for $190.32, payable to "Roy J. Hockrey, Admr. of the Est. of George Frederick Bowland," and on January 31st he deposited said draft to his personal credit in the Phoenix National Bank, first indorsing it "Roy J. Hockrey, Admr. of the Est. of George Frederick Bowland," and

signing his own name underneath such indorsement. Although Hockrey and respondent both lived in Phoenix, and saw each other frequently, and although Hockrey made frequent inquiries of respondent concerning the collection, the latter did not report that he had made the collection, but, on the contrary, reported he was still endeavoring to make it.

The matter ran thus until in the early spring of 1925, when one day Hockrey informed Miss Alice M. Birdsall, a member of this bar, of the claim he had as administrator of the Bowland estate against the United States and of his inability to make the collection, whereupon Miss Birdsall volunteered to, and did, write a letter of inquiry to the Veterans' Bureau about the claim. Shortly thereafter, in April or May, 1925, an agent of the government came to Phoenix to investigate the matter. In respondent's office the agent showed him a photostatic copy of the draft respondent had cashed on January 31, 1922, and the latter admitted he indorsed the draft and received the money thereon, and then and there (within ten minutes, he says) gave such agent a draft covering the amount, payable to the Treasurer of the United States.

Hockrey gave the minimum number of times that he inquired of respondent about the collection as four a year, and the maximum number as at least thirty times. He stated that he had not authorized respondent to indorse the said draft.

Respondent, testifying before the referee in his own behalf excused himself for not reporting the collection to Hockrey on two grounds: (1) That he was never asked by Hockrey for the money, and (2) that he had performed some legal services for Hockrey personally and not as administrator of the Bowland estate. Respondent concluded his statement before the referee as follows:

"Now, if I was asked my opinion why I just delayed this matter or why I neglected to turn Hockrey over this money, I don't know any reason, except that there was a difference between us, and I was as surprised as could be when the government officer asked me for it, because it had simply gone out of my memory. Of course I knew when I received it, and I knew I had it, no question about that, and I knew that there were other matters pending where I expected to get some money."

Broadly viewing this evidence, and giving it the most charitable construction possible, we are impressed that respondent's conduct was most reprehensible, if not to say criminal. He violated his duty when he indorsed and cashed the draft without authority from the payee; also in depositing it to his personal credit. These breaches of duty, however, might be overlooked if respondent had promptly paid the money to Hockrey or notified him of the collection; but, having obtained the money unlawfully, he unlawfully retained it for over two years and four months on the flimsy and false pretext that his client had not demanded it of him sooner. Finally, when he was confronted by the government's agent with the damning evidence of his unfaithfulness, he paid the money that belonged to his client—money that he had wrongfully appropriated to his own use for so long a time—over to such agent instead of hunting up its true and rightful owner or trustee and paying it to him. This act itself tends strongly to convict respondent. It was just what a person guilty of wrongdoing naturally and ordinarily would do when detected. If his delay in reporting the collection had been a mere oversight or inadvertence and his conscience clear, when the photostatic copy of draft with indorsements was flashed in his face, he would have sought to correct his error through his client, and would not have unfurled the white flag to the govern-

ment, whose only interest, having paid its debt, was to see that the little pittance due from it to a dead soldier reached those legally entitled to it.

The suggestion or insinuation that respondent did not report the collection because of a claim or lien for fees or services in connection therewith, or on account of services rendered Hockrey in his individual or private capacity is just as fallacious and unjustifiable. Respondent being a member of the bar, we credit him with being familiar with the law which requires a court allowance for legal services rendered an administrator or executor. Paragraph 992, Civil Code 1913. And he also knew, we assume, that the effects of the Bowland estate could not be paid out by the administrator for legal services rendered him concerning his personal affairs. We are not so credulous as to believe that respondent, after cashing the draft and getting possession of the money, had a total lapse of memory. On the contrary, it would seem that every time he saw Hockrey thereafter, and it is undisputed that he did see him frequently, he would have been reminded that he had that money on hand, and that he had no right to retain it.

The relation between client and lawyer is one of trust and confidence, and, aside from that relation, it seems that common honesty would have dictated a very different course of action from that pursued by the respondent. Subdivision 7, section 2, chapter 32, of the Laws of 1925, makes it a ground for disbarment for an attorney at law to violate the canons and rules of ethics promulgated by the American Bar Association. One of such rules, existing at the time chapter 32 became effective, reads as follows:

"Money of the client or other trust property coming into the possession of the lawyer should be reported promptly, and, except with the client's knowledge and consent, should not be commingled with his private property or be used by him."

The respondent did not observe this wholesome and salutary rule, but, on the contrary, disregarded it and all of its provisions with an indifference irreconcilable with honesty or fair dealing toward his client.

The other accusations, being directed at conduct of respondent before and at the time he became a member of this bar, it is strenuously insisted are not proper grounds for disbarment, and that, if they were, they are barred by section 13, chapter 32, Laws of 1925, reading as follows:

"The Supreme Court may revoke the license of any attorney at any time within five years after same is granted, upon satisfactory showing that the same was obtained by false representation, fraud or deceit."

It was established beyond any doubt that the Wendell Bailey, who in March, 1915, was fined for contempt by the Supreme Court of Montana (50 Mont. 365, Ann. Cas. 1917B 1198, 146 Pac. 1101), for practicing law without a license in violation of the laws of that state, and the Gordon W. Bailey, who in December, 1916, was disbarred by the Supreme Court of Nevada (40 Nev. 139, 161 Pac. 512) for practicing a fraud upon the court, was and is the identical Weldon J. Bailey who was by this court licensed to practice law on September 14, 1918.

Respondent not only did not disclose these judgments of conviction of malpractice to this court, but hid his identity by applying for license to practice here under the name of Weldon J. Bailey. In Montana it was "Wendell"; in Nevada "Gordon W."; and in Arizona "Weldon J."

At the time of his admission to practice in Arizona the law authorized this court to admit applicants to practice in two ways: (1) By furnishing a certificate of admission to practice in the court of last resort of another state, or the District of Columbia, or a territory, to the effect that he was in good standing, and

had been in active practice for at least three years last past, together with the recommendation of at least one of the judges of such court of last resort; or (2) he might be admitted upon a certificate of qualification from our board of bar examiners. Paragraphs 262 and 264, Civil Code. The respondent obtained admission under the first named provision of the statute.

The evidence submitted to this court in connection with respondent's application, as it appears in the files of the clerk of this court, was a certificate showing that he had been admitted by the district court of appeals of the second appellate district of the state of California on the twenty-fifth day of September, 1916. On such certificate is indorsed a recommendation for his admission by the presiding justice of that court. Such certificate was filed in this court on the fourteenth day of September, 1918. The minute entry, made on the same day, admitting respondent is based upon his California certificate. With the California certificate, however, there is a certificate showing that respondent had been admitted by the Supreme Court of the state of Alabama on the twelfth day of August, 1906. (This certificate is dated the tenth day of July, 1918.) It is admitted by respondent that the date of his admission in Alabama was 1916 and not 1906.

We get no light from our record as to why the Alabama certificate is in the files of respondent's application, but there is a good reason why it should be here. Without it this court would have had no evidence that respondent had been in active practice (or eligible to practice) for the three years last past as required by the statute. But, as it was changed to show respondent was admitted in Alabama in 1906, it afforded at least evidence that he might have been practicing the required length of time. The change inured to the

benefit of respondent only. No one else would have had any motive to alter the certificate to make it show he was admitted in Alabama in 1906 instead of 1916. It is true he says that he wrote the clerk of the Supreme Court of Alabama to send a copy of his certificate of admission direct to the clerk of the Supreme Court of Arizona; that he never had the certificate in his possession and that it was not used or shown on his admission to this court, but his statement in that regard is not reasonable. Besides, if it was transmitted from Alabama to Arizona direct, as he says, it most likely would have been accompanied by a letter of transmission, and no such letter appears in the files of this court. It bears date some thirty days before his application was acted upon by this court, and therefore must have been written for, received and used upon his application for admission by this court. It was perhaps merely an oversight that it was not referred to in the minute entry showing respondent's admission.

We have referred to respondent's conviction for contempt in Montana, his disbarment in Nevada, and the deceit and fraud practiced by him in obtaining a license to practice in Arizona, not as grounds for disbarment, for these occurred more than five years before this proceeding was begun, and for that reason are barred as a ground to revoke respondent's license under section 13, *supra,* but because we think they may and should be considered as evidence in connection with the principal charge in determining whether respondent is a proper person to hold a license to practice law.

Learning is not the only qualification of a lawyer. He should be honest and truthful and fair, not only in his dealings with his clients but with the courts. Indeed, as we conceive it, these are the great *desiderata* in the composition of the true lawyer. We think what

the respondent did in Montana, in Nevada, and in the procurement of his license in this state is strong evidence tending to show that he was entirely capable of doing what is charged against him in the Hockrey accusation, and that he is not a proper person to practice law.

The record shows respondent's conduct as an attorney at law, over a period of eleven years, from 1914 to 1925, to have been uniformly bad, and that detection and punishment have been of no avail. He has without reforming, by the simple process of changing his name slightly, passed on into another jurisdiction, secured admission to practice, and resumed his former unlawful and unethical conduct. A lack of regard for the sanctity of the law, respect for the courts and of fidelity to his clients are all exhibited by the record. Defects of character like these render him unfit to discharge the duties of the high and honorable office 'of an attorney at law.

A license to practice law is notice to those who may want or need the help and advice of a lawyer that the licensee is not only able to render help and advice, but that he will do it with all good fidelity both to the courts and to his clients (as his oath requires); and when, in the course of his practice, it is discovered he is not dealing with his clients or the courts honestly or is guilty of unprofessional and unethical conduct or practices, it becomes the' duty of those who have licensed him to take from him his license, however unpleasant it may be.

The order of the court is that the name of Weldon J. Bailey be stricken from the roll of attorneys of this court, and that he be permanently precluded from practicing as such attorney in all the courts of this state.

LOCKWOOD and McALISTER, JJ., concur.