206 P.2d 528

## Application of KAUFMAN et al.

### No. 7528.

Supreme Court of Idaho.

May 16, 1949.

Eugene H. Anderson, Boise, for applicants.

Robert E. Brown, Kellogg, J. L. Eberle, Boise, V. K. Jeppesen, Nampa, for Board of Commissioners of Idaho State Bar.

John A. Carver, Jr., Boise, Amicus Curiae.

**300**

GIVENS, Justice.

Applicants respectively filed with the Clerk documents indicating their qualifications and compliance with the requirements of Senate Bill No. 32, Chapter 73, 1949 Session Laws, p. 126,[1] as to age, residence, citizenship, moral character and learning and ability, and thereon applied

---

[1] "Section 1. That Section 3-101 of the Idaho Code Annotated be, and the same is hereby amended to read as follows:

"3-101. Persons Entitled to Admission.—Any resident of this state who is a citizen of the United States, or has bona fide declared his intention to become a citizen of the United States, of the age of twenty-one years, of good moral character, and who possesses the necessary qualifications of learning and ability may, under such rules as the Supreme Court may prescribe be admitted as an attorney and counselor in all courts of this state;

"Provided, however, that the following applicants shall be admitted as attorneys and counselors in all courts of this state without being required to pass any examination as to their qualifications with respect to learning and ability, to-wit: Residents of this state who are citizens of the United States, of the age of twenty-one years and of good moral character, who are graduates of the University of Idaho School of Law, or graduates of any law school which is a member of the Association of American Law Schools, or which has been approved by the American Bar Association, or the Committee on Legal Education of the American Bar Association, or by the Association of American Law Schools;

"Provided, however, any applicant who is not a graduate of the University of Idaho School of Law, must have, as part of his legal education, while a student at the University of Idaho Law School, completed at least two semesters of approximately eighteen weeks each of the regular prescribed course of study provided by the faculty of the University of Idaho School of Law;

"Any applicant desiring to be admitted as an attorney or counselor at law under the provisions of this act, shall make application for such admission to the Clerk of the Supreme Court of the State of Idaho, and shall file with said Clerk, the following documents:

"(1) Proof of good moral character.

"(2) The original or photostatic copy of a diploma granted either by the University of Idaho Law School, or a law school which is a member of the Association of American Law Schools, or is approved by the American Bar Association, or the Committee on Legal Education of the American Bar Association, or the Association of American Law Schools, and if such applicant is not a graduate of the University of Idaho, he shall also file with said clerk a certificate from the Dean of the Law School of the University of Idaho that he has, while a resident student at the University of Idaho, satisfactorily completed two semesters of approximately eighteen weeks each, work in the Law School of the University of Idaho.

"An applicant who shall comply with the above requirements and pay the admission fee provided by law, shall be entitled to have issued to him by the Supreme Court of the State of Idaho, a certificate authorizing him to practice as an attorney and counselor at law in all courts in the State of Idaho.

"Section 2. Nothing herein contained shall be construed as limiting or restricting the right of any applicant not possessing the qualifications prescribed in Section 1 of this act to take the bar examination and to be admitted to practice in all courts of this State.

"Section 3. An emergency existing therefor, which emergency is hereby declared to exist, this act shall be in force and effect from and after the date of its passage and approval." Senate Bill #32, Chap. 73, 1949 Session Laws, p. 126.

for summary admission to the Bar of this Court, as follows:

"February 21st, 1949.

*    *    *    *    *    *

"With the submission of the above documents I hereby request that I be sworn in as an attorney by the Clerk of the Supreme Court of the State of Idaho and be admitted to the practice of law in this state."

"s/ Samuel Kaufman, Jr.

"February 25, 1949

*    *    *    *    *    *

"Wherefore, the writer respectfully applies for admission to the practice of law before this Honorable Court together with all the rights and privileges pertaining thereto relating to the practice of the profession of law in the State of Idaho, all in accordance with the provisions of Senate Bill #32 aforesaid."

"s/ John W. Gunn

"February 28, 1949

*    *    *    *    *    *

"I am respectfully submitting my application for admission to the State Bar of Idaho. I am enclosing a certificate from the University of Idaho showing that I have successfully completed the law course and will be issued a diploma at the June Commencement Exercises. I am enclosing three letters as proof of character."

s/ Sumner Delana

The State Bar Commissioners, March 8, filed objections thereto, asserting this Court has exclusive and inherent power in the premises, and has in the exercise thereof, adopted rules and regulations prescribing the procedure, fitness and qualifications of persons seeking admission to the Bar, and that said statute invades and nullifies such power and is an attempt by the legislature to exercise powers properly, exclusively and inherently belonging to the judicial department and this Court, in violation of Article II, Section 1 and Article V, Section 13 of the Constitution.

Other interposed objections, countered by applicants, by reason of the conclusion reached, need not be and are not considered.

Applicants traverse the Commissioners' objections and justify the statute as a valid and reasonable enactment of the legislature under its police—Idaho Power etc. Co. v. Blomquist, 26 Idaho 222 at page 241, 141 P. 1083, Ann.Cas.1916E, 282; Ingard v. Barker, 27 Idaho 124, 147 P. 293—and reserve power in Article I, Section 21, so historically recognized and exercised, and that the constitution does not contrarily, expressly give such regulation and control of admissions to the judiciary.

Amicus curiae agreeing with applicants, additionally stresses the distinction between the existence of power and its exercise, the overlapping thereof among the three branches of government, c/f Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977, hence application of principle of separation furnishes no reasonable distinction; that "inherent" and "power" are distasteful to inheritors of English freedom and to be scrutinized whenever their application tends to

negative individual liberty, or narrow collective ordering of governmental machinery, apparently conceding the power to admit attorneys is generally considered to be a judicial function, but exercised solely as the act of admitting—and if we understand counsel—that all antecedent matters such as determining residence, citizenship, age, character and learning and ability are thus; and because no controversy exists therewith, no part of the judicial function which comprises alone the act of admission.

■ There is an attempt to gloss over or soften the imperative impact of the statute by suggestion that it may be considered directory and not mandatory. Such thought cannot be sustained, because; first, the applications are based on no such assumption; they are drawn squarely on the premise that, having the scholastic qualifications prescribed by the statute, the court has no alternative but to admit. Second, the wording of the statute is mandatory and upon compliance therewith, leaves nothing for the court to do but admit.

"Provided, however, that the following applicants *shall* be admitted as attorneys and counselors in all courts of this state without being required to pass any examination as to their qualifications with respect to learning and ability, * * *.

"An applicant who shall comply with the above requirements and pay the admission fee provided by law, *shall* be entitled to have issued to him by the Supreme Court of the State of Idaho, a certificate authorizing him to practice as an attorney and counselor at law in all courts in the State of Idaho." Chap. 73, 1949 Session Laws, p. 126. (Emphasis ours.)

Application of Levy, 23 Wash.2d 607, 161 P.2d 651, at page 655, 162 A.L.R. 805.

■ The distinction amicus curiae seeks to make between the fixing of standards and determination of an applicant's compliance therewith as ministerial acts and merely ascertaining that the applicant gives the documentary or oral proof that he possesses evidence of compliance furnished by school or university and the order thereon, the administering the oath and signing the roll of attorneys as the real judicial functions, while labored, in the dissent in Re Application for License to Practice Law, 67 W.Va. 213, 67 S.E. 597, at page 604, the underlying California cases distinguished in Re Cate, Cal.App.1928, 270 P. 968, at page 984, is only a minority discussion and such case holds that the first is a prerequisite to the second; and to hold the first is ministerial and latter *alone* judicial is to mistake form for substance and is contrary to the declared conception of what the judicial function comprises in the admission to the bar. The exercise of judgment or discretion is not a ministerial act, Radermacher v. Sutphen, 60 Idaho 529, at page 533, 92 P.2d 1070, and the determination of character is a judicial investigation. In re Weinstein, 150 Ore. 1, 42 P.2d 744.

The two most important qualifications to be considered in determining whether an

applicant should be admitted to the bar are character and legal learning.

It is urged examinations are not a perfect way of gauging learning or mental ability. Granted, but the selection of questions and grading of answers certainly are not ministerial. The statute herein empowers the law school, not the courts to so test. The question is not which may do it better, but what is the essential essence of the testing and appraisal.

The authorities hold admissions are the exercise of judicial functions; therefore power, and constitute a justiciable controversy.

"The profession of an attorney and counselor is not like an office created by an Act of Congress, which depends for its continuance, its powers and its emoluments, upon the will of its creator, and the possession of which may be burdened with any conditions not prohibited by the Constitution. Attorneys and counselors are not officers of the United States; they are not elected or appointed in the manner prescribed by the Constitution for the election and appointment of such officers. They are officers of the court; admitted as such by its order, upon evidence of their possessing sufficient legal learning and fair private character. It has always been the general practice in this country to obtain this evidence by an examination of the parties. In this court the fact of the admission of such officers in the highest court of the States to which they respectively belong, for three years preceding their application, is regarded as sufficient evidence of the possession of the requisite legal learning, and the statement of counsel moving their admission sufficient evidence that their private and professional character is fair. The order of admission is the judgment of the court that the parties possess the requisite qualifications as attorneys and counselors, and are entitled to appear as such and conduct causes therein. From its entry the parties become officers of the court, and are responsible to it for professional misconduct. They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded. Ex parte Heyfron, 7 How., Miss., 127; Fletcher v. Daingerfield, 20 Cal. 427, 430. Their admission or their exclusion is not the exercise of a mere ministerial power. It is the exercise of judicial power, and has been so held in numerous cases. It was so held by the Court of Appeals of New York in the matter of the application of Cooper for admission. Matter of Cooper, 22 N.Y. 67, 81. 'Attorneys and counselors,' said that court, 'are not only officers of the court, but officers whose duties relate almost exclusively to proceedings of a judicial nature. And hence their appointment may, with propriety, be intrusted to the courts, and the latter in performing this duty may very justly be considered as engaged in the exercise of their appropriate judicial functions.'" Ex parte A. H. Garland, 71 U.S.

333–399, 4 Wall. 333–399, 18 L.Ed. 366 at page 370.

"Both the admission and the removal of attorneys are judicial acts. It has been so decided in repeated instances." Randall v. Brigham, 7 Wall. 523–541, 19 L.Ed. 285 at page 291.

"We take it that the law of Illinois treats the action of the Supreme Court on this petition as a ministerial act which is performed by virtue of the judicial power, such as the appointment of a clerk or bailiff or the specification of the requirements of eligibility or the course of study for applicants for admission to the bar, rather than a judicial proceeding.

"For the purpose of determining whether the action of the Supreme Court of Illinois in denying Summers' petition for an order for admission to practice law in Illinois is a judgment in a judicial proceeding which involves a case or controversy reviewable in this Court under Article III, Sec. 2, Cl. 1, of the Constitution of the United States, we must for ourselves appraise the circumstances of the refusal. (Citing many cases.) * * *

"A claim of a present right to admission to the bar of a state and a denial of that right is a controversy. When the claim is made in a state court and a denial of the right is made by judicial order, it is a case which may be reviewed under Article III of the Constitution when federal questions are raised and proper steps taken to that end, in this Court." In re Summers, 325 U.S. 561, 65 S.Ct. 1307 at page 1310-1311, 89 L.Ed. 1795, 1801.

Applicants and amicus curiae argue that from earliest times legislatures generally, and particularly in Idaho, have prescribed the means, manner and qualifications for admission of attorneys to our bar.

The Act of 1864, Territorial Session Laws 1864, p. 516, required satisfactory testimonials of good moral character, a strict examination in open court as to applicant's qualifications by one of the judges of the Supreme Court of this Territory, and that such examination might be dispensed with in the case of an attorney admitted in a sister state or territory.

The amendment, 1866 Session Laws, p. 164, authorized an examination by a committee appointed by the Court. The Acts of 1881, Chapter VIII, Sec. 114, Session Laws of 1881, p. 22, and 1887, Sections 3990 through 3994, Revised Statutes, were substantially the same as in 1864.

Applicants argue adherence to the statutes by the courts showed such subservience as to demonstrate the courts have acknowledged the right of the legislature to so fix standards of admission as to justify and support the present statute. The record is to the contrary. Prior to 1899, the statutes limited admission to white males. In 1895, Mrs. Helen S. Young of Osburn, Idaho, applied for admission to practice law and was admitted to practice by the Court composed of Honorable John T. Morgan, Chief Justice, a member of the Constitutional Con-

vention; Hon. Isaac N. Sullivan and Hon. Joseph W. Huston, Justices. Minute entry October 26, 1895, p. 31, appended.[2] Her admission was not sanctioned by Section 3990, 1887 S.L. supra, and before that time women generally, in England and the United States, had not been admitted. It would seem reasonable to assume the Court considered it derived its authority to nevertheless admit Mrs. Young, from Section 13, Article V of the Constitution, which provides:

"The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; * * *."

and that the admission and control of the attorneys were within the purview of this Section of the Constitution; in any event, the Court admitted her despite the statute. While this proceeding was never incorporated in an opinion, it is clearly indicative, not only of the action of the court which

was not in conformity with the statute, but also of the apparent attitude of the Court at that time with regard to its authority. The Woman's Suffrage amendment to the Constitution, Art 6, § 2, was proposed in the 1895 Session Laws and adopted November 1896. Session Laws 1899, p. 302, House Bill No. 157, removed the statutory restriction for admissions as to color and sex.

Chapter 211, 1923 Session Laws, p. 343, integrated the bar and authorized the commissioners to determine by rule, submitted to and approved by the Supreme Court, the qualifications and requirements for admission to practice law and the conduct of examinations. This Act was held unconstitutional for reasons not germane herein. Jackson v. Gallet, 39 Idaho 382, 228 P. 1068. These defects were remedied by Chapter 89, 1925 Session Laws, p. 124, and Chapter 63, 1929 Session Laws, p. 92; In re Edwards, 45 Idaho 676, 266 P. 665; Id. 50 Idaho 238, 294 P. 847. None of the amendments bore directly upon qualifications to practice law,

---

[2] Lewiston Oct. 26, 1895.

Supreme Court  }
State of Idaho  } ss.

Court met pursuant to adjournment.
Present:
    Hon. John T. Morgan, Chief Justice
    Hon. Isaac N. Sullivan    Justice
    Hon. Joseph W. Huston    Justice,
and the officers of the Court, when the following proceedings were had, to wit:
In the matter of the examination  ⎫
and admission of Helen L. Young   ⎬
as an Attorney and Counselor of   ⎭
this Court
    The above named applicant having made application for an examination in due

form to test her legal qualification as to learning and ability as a prerequisite to admission to practice as an attorney and counselor in the Courts of this State, and having passed such examination to the satisfaction of the Court, and produced satisfactory testimonials that she is a woman of good moral character, Now therefore, it is ordered that Helen L. Young be and she is hereby admitted to practice as an Attorney and Counselor in all the Courts of this State.
    Whereupon the Clerk, by direction of the Court, administered to said applicant the required attorney's oath, and caused her to sign the Roll of Attorneys.

prescribing additional ethical standards and amplifying grounds for discipline; thus, at no time has the legislature of this State heretofore attempted to impose upon the Supreme Court the mandatory duty of admitting applicants to the Bar with maximum scholastic qualifications prescribed by the legislature, and throughout Territorial and Statehood days, fixing these standards and the determination of whether the applicant possessed the necessary qualifications, were by statute and in practice, judicial functions exercised by the courts.

█ It is argued that this Court in Anderson v. Coolin, 27 Idaho 334, 149 P. 286, 288, stated and unequivocally recognized that the legislature had the power contended for it by the applicants and amicus curiae herein.

"It will be conceded that the terms and conditions of the admission of an attorney to practice law, or to continue in the practice of law, as well as his powers, duties, and privileges, are proper subjects of legislative control, to the same extent and subject to the same limitations as in the case of any other profession or business that is created or regulated by statute. It is a privilege or franchise that is extended by legislative enactment, conditioned upon a compliance with the statutes regulating the practice of the law and the conduct of the attorney in his private life and dealings with the public, and the respect due the courts of justice and judicial officers. The Legislature may rightfully provide under what circumstances and conditions attorneys may appear before the courts of this state in the practice of their profession, as well as to provide that certain acts shall have been performed before the machinery of the courts is put in operation."

and that such holding has been continuously approved and followed. It is fundamental that:

"Judicial opinions are authoritative only on the facts on which they are founded, and general expressions must be considered and construed in the light of this rule." Bashore v. Adolf, 41 Idaho 84, 238 P. 534, 41 A.L.R. 932; Stark v. McLaughlin, 45 Idaho 112, syl. 1, 261 P. 244; Eldridge v. Black Canyon Irr. Dist., 55 Idaho 443, syl. 3, 43 P.2d 1052; North Side Canal Co. v. Idaho Farms Co., 60 Idaho 748, syl. 1, 96 P.2d 232; Detroit Bar Ass'n v. Union Guardian Trust Co., 1938, 282 Mich. 707, 281 N.W. 432 at page 433.

In Anderson v. Coolin, supra, the court was considering the right of a non-resident attorney to sign pleadings and practice in the State under Sections 3991, 3992, 3993 and 3994, R.C. 1907, which as amended in 1909, were substantially as they existed in 1887, prior to the adoption of the Constitution providing for a strict examination in open court of the qualifications of the applicant by the judges of the Supreme Court and that such examination *might* be dispensed with in the case of a foreign attorney. What the court said, therefore, must be taken in connection with the statutes as

they then existed and as applied, and with added comments:

"We do not wish to be understood as holding that the district courts, as well as this court, have not the inherent power, as a matter of comity, to permit an attorney from a sister state or territory to present argument in any pending case, but even this prerogative should not be abused, and where attorneys from sister states or territories have business which requires their intermittent appearance in the courts of this state, it is quite proper that they should comply with the provisions of the laws of this state regulating the right to engage in the practice of their profession within this jurisdiction." Anderson v. Coolin, supra.
and its holding that the party involved therein had not been admitted, either upon an examination in open court or by license or certificate from another state and, therefore, his appearance was unauthorized.

The Court, speaking through the author of the Coolin case, further emphasized the decisive holding in that case in Re Edwards, supra [45 Idaho 676, 266 P. 670], thus:

"The Supreme Court has the inherent power to adopt rules and regulations prescribing the fitness and qualifications of persons seeking to practice before the courts of this state, and to ultimately determine whether, under the statutes, or rules promulgated by it, persons possess the necessary qualifications, or are persons of good moral character."

Indeed, in upholding the amended integrated bar Act, the Court sanctioned it only because the revisions recognized the judicial power and its over-all scope.

"This section cannot be sustained in its entirety, if it be construed to confer judicial powers upon the board. Such rules as it may adopt which do not receive the approval of the Supreme Court and become the rules of this court, prescribing the qualifications and requirements for admission to practice law and the manner in which examinations shall be conducted, are without force or effect, since by section 12 of chapter 89 (Sess.Laws 1925, p. 127) it is provided: 'The rules and regulations made by the board * * * shall, before becoming effective, be submitted to and approved by the Supreme Court of the state of Idaho.'

"It will not be seriously contended that the Supreme Court is bound to give its approval to the admission of such persons only, to practice law, whose names are certified by the board." In re Edwards, supra, 45 Idaho at page 687, 266 P. at page 669.

If the legislature could not *bind* the Supreme Court to admit those approved by the commission, absent approving court rule, it could not bind the Court to admit those approved by someone else; such as the State University Law School, absent approving court rule promulgated at the discretion of the Court. This statement of the power of the Court is again emphasized by

the same Justice in Freeling v. Tucker, 49 Idaho 475 at page 479, 289 P. 85.

It is argued that since the Constitution does not expressly empower or authorize the Court to prescribe qualifications for admission, the legislature under its police and reserve power may do so and that such does not infringe upon or interfere with the judiciary. Such contentions embracing these propositions—in line with applicants'—were made in Wright v. Callahan, 61 Idaho 167, 99 P.2d 961:

"The legislature has plenary power to enact any law that is not expressly prohibited by the Constitution."

\* \* \* \* \* \*

"Unconstitutionality must be established beyond all reasonable doubt."
in support of the statute establishing the office of comptroller, not as against the judiciary, but as against the contention that such creation in effect largely abrogated the State Auditor, a constitutional officer.

The position thus taken in support of that statute was stronger than herein because the provision of the Constitution creating the office of auditor authorized the legislature to prescribe his duties, Article IV, Sec. 1. The Court nevertheless held that those duties historically exercised by the Territorial Controller were constitutionally transferred to the State Auditor as implied powers and became so fixed thereby that the legislature could not take them from him. Wright v. Callahan, supra, 61 Idaho at pages 180, 181, 99 P.2d at page 961. The Territorial Supreme Court always exercised the power of fixing and determining standards and judging as to compliance therewith directly or by a committee of its choice and under its control; therefore, under parity of reasoning, such was carried over as an implied power into the State Supreme Court and has by it been exercised as a judicial function since Statehood.

Applicants and amicus curiae further dispute that the admission of attorneys has universally been a judicial function, exercised as such, acquiesced in by the legislative branch and that the contrary is true and so borne out by decisions old and recent.

In re Applicants for License, 1906, 143 N. C. 1, 55 S.E. 635, 10 L.R.A.,N.S., 288, 10 Ann.Cas. 187, after a historical resume, upholds, contra two dissents, applicants' position; adhering and acceding to a statute fixing as a maximum standard of character qualifications supporting affidavits of two members of the bar, on the basis such was and had been a legislative prerogative at common law and by statute; relying on, among other cases, In re Cooper, 22 N.Y. 67, and distinguishing Ex parte Garland, 1866, supra; Ex parte Secombe, Minn.1857, 19 How. 9, 15 L. Ed. 565, and nothing In re Day, 181 Ill. 73, 54 N.E. 646, 50 L.R.A. 519. This opinion well illustrates that only as general rules and principles are applied to specific

situations does the law become decisive and have meaning.* In re Applicants for License, supra, has been followed with approval in Seawell v. Carolina Motor Club, 1936, 209 N.C. 624, 184 S.E. 540, upholding a statute defining the practice of law and barring anyone not an attorney therefrom.

Likewise in Detroit Bar Ass'n v. Union Guardian Trust Co., 1937, 282 Mich. 216, 276 N.W. 365, with contrary effect upholding a statute authorizing trust companies to perform certain acts as not thereby practicing law. In re Tracy, 1936, 197 Minn. 35, 266 N.W. 88, at page 92, noted In re Applicants for License, supra, and In re Cooper, supra, and In re Evans, 72 Okl. 215, 179 P. 922 ante, but held to the contrary in striking down a two-year statute of limitation for disbarment as violative of the judiciary's inherent power, citing numerous other authorities.

Ralston v. Turner, 1942, 141 Neb. 556, 4 N.W.2d 302, 144 A.L.R. 138, may be said to be a "white horse case" in that it considered and after an exhaustive examination of the authorities, many cited to us and referred to herein, including In re Applicants for License, supra, struck down a statute requiring the admission of graduates of reputable law schools operating in Nebraska, on the ground that the judicial department and not the legislative has authority to prescribe rules for admission to the bar, 4 N.W.2d at pages 305, 310, as a judicial and not a legislative function; that the legislature may fix only minimum and not maximum standards and construes Petition of Florida State Bar Ass'n, 134 Fla. 851, 186 So. 280, at page 285, as so holding as to minimum and not maximum; but the later case evidently otherwise agreeing with In re Applicants for License, supra, recognizes that only North Carolina, New York and Florida have deviated from the universal rule that the power to regulate admissions and disbarments is inherent in the courts and cannot be taken from them by the legislature.

Arizona, in Re Bailey, 1926, 30 Ariz. 407, 248 P. 29, 31, Id. 31 Ariz. 407, 254 P. 481, held:

"It is therefore held by the best-considered cases, where this point has been specifically passed on, that the requirements prescribed by the Legislature are merely restrictive of the rights of the applicant, and that they do not, and cannot, compel the courts to admit any one to practice. As is stated by the Supreme Court of Pennsylvania In re Splane, 123 Pa. 527, 16 A. 481:

"'We are clearly of opinion that the act of 1887, though probably not so intended, is an encroachment upon the judiciary department of the government. * * * It is an imperative command to admit any person to practice law upon complying with certain specified conditions. * * * No judge is bound to admit, or can be compelled to admit, a person to practice

law who is not properly qualified, or whose moral character is bad. * * * The attorney is an officer of the court, and is brought into close and intimate relations with the court. Whether he shall be admitted, or whether he shall be disbarred, is a judicial and not a legislative question.' Re Miller, 29 Ariz. 582, 244 P. 376; Matter of Mosness, 39 Wis. 509, 20 Am.Rep. 55; In re Day, 181 Ill. 73, 54 N.E. 646, 50 L.R.A. 519; In re Burton, 67 Utah 118, 246 P. 188.

"The courts are, of course, a separate and independent division of the government, and, within their constitutional rights, not subject to control by the Legislature. Article 3, Constitution of Arizona. We think there is no more important duty, nor one whose performance is more necessary to the proper functioning of the courts, than to see that their officers are of proper mental ability and moral character. The Legislature may, and very properly does, provide from time to time that certain minimum qualifications shall be possessed by every citizen who desires to apply to the courts for permission to practice therein, and the courts will require all applicants to comply with the statute. This, however, is a limitation, not on the courts, but upon the individual citizen, and it in no manner can be construed as compelling the courts to accept as their officers all applicants who have passed such minimum standards, unless the courts are themselves satisfied that such qualifications are sufficient. If they are not, it is their inherent right to prescribe such other and additional conditions as may be necessary to satisfy them the applicants are indeed entitled to become such officers. In other words, they may not accept less, but may demand more, than the Legislature has required."

Approved in Re Cate, Cal.App., 270 P. 976, infra, and In re Lavine, 2 Cal.2d 324, 41 P.2d 161 at page 162:

"The requirements of the Legislature in this particular are restrictions on the individual and not limitations on the courts. They cannot compel the courts to admit to practice a person who is not properly qualified or whose moral character is bad. In other words, the courts in the exercise of their inherent power may demand more than the Legislature has required."

Also, In re Myrland, 45 Ariz. 484, 45 P. 2d 953; In re Greer, 52 Ariz. 385, 81 P. 2d 96; In re Opinion of the Justices, 279 Mass. 607, 180 N.E. 725, 81 A.L.R. 1059; In re Tracy, supra; Ex parte Steckler, 179 La. 410, 154 So. 41; Meunier v. Bernich, La.App., 170 So. 567 at page 575; Petition of Florida State Bar Ass'n, supra.

California, in a lengthy opinion after a historical review, arrives at a conclusion contrary to In re Applicants for License, N.C., supra. In re Cate, supra, and 271 P. 356, reaffirmed and amplified in same case in 273 P. 617, but rendered rather nugatory as to a decisive holding bearing on the case at bar by the disposition in the Supreme Court of the same

case in 1929, 279 P. 131. The general statements as to the relative powers of the judiciary and the legislature on admissions in Brydonjack v. State Bar of California, 208 Cal. 439, 281 P. 1018, 66 A.L.R. 1507, were held by the actual decision in the case to mean that the court, though noting In re Cate, Cal.App., 279 P. 131 supra, could, would and did disregard the statutory requirement that an applicant would not be admitted unless the Bar Commission had recommended such action, and though the Commission had refused such recommendation, the Court ordered his admission. This case was cited with evident approval in Agg Large v. State Bar, 218 Cal. 334, 23 P.2d 288. Subsequent California decisions would seem to point up the Brydonjack case to the effect that the Supreme Court:

" ' *  * ' * has the inherent power and authority to admit an applicant to practice law in this state or to reinstate an applicant previously disbarred despite an unfavorable report upon such application by the board of bar governors of the State Bar, we think is now well settled in this state. Brydonjack v. State Bar, 208 Cal. 439, 446, 281 P. 1018; 66 A.L.R. 1507; Vaughan v. State Bar, 208 Cal. 740, 284 P. 909. ' The recommendation of the board of bar governors is advisory only but as that body has been provided by legislative enactment as an arm of this court for the purpose of assisting in matters of admission and discipline, the greatest deference should be, and always has

been, accorded to its recommendation by this court. Nevertheless the final determination in all these matters rests with this court, and its powers in that regard are plenary and its judgment conclusive. Fish v. State Bar, 214 Cal. 215, 225, 4 P. 2d 937; Brydonjack v. State Bar, supra.' In re Lacey, 11 Cal.2d 699, 701, 81 P.2d 935, 936." Preston v. State Bar of California, 28 Cal.2d 643, 171 P.2d 435 at 438–9.

McArthur v. State Bar of California, 28 Cal.2d 779, 172 P.2d 55; In re Lavine, supra.

Georgia, in Ex parte Ross, 196 Ga. 499, 26 S.E.2d 880, adhered to the statute as controlling in refusing to admit an applicant (colored) who had not been recommended by the Bar Examiners. Georgia has held in disbarment proceedings the defendant is entitled to trial by jury. James v. State, 61 Ga.App. 860, 7 S.E.2d 398.

In re Day, 181 Ill. 73, 54 N.E. 646, 50 L.R.A. 519, held unconstitutional a statute very similar to the one at bar, requiring applicants holding diplomas in law from regular law schools in the State to be admitted without examination. It would unduly extend the length of this opinion to set forth all the cases which have followed or cited this case with approval, but it suffices to say it has been referred to by some 22 states with varying degrees of approval and distinguishing disapproval

In re Casebier, 1930, 129 Kan. 853, 284 P. 611, might seem to hold the legislature gave the courts authority to admit, but has been later construed otherwise. State ex rel. Boynton v. Perkins, 1934, 138 Kan. 899, 28 P.2d 765, at page 768; Depew v. Wichita Ass'n of Credit Men, 1935, 142 Kan. 403, 49 P.2d 1041, at page 1043; and considered as holding the judiciary has power · beyond the statutes, In re Cox, 1948, 164 Kan. 160, 188 P.2d 652, at pages 657–8; In re Bozarth, 1936, 178 Okl. 427, 63 P.2d 726.

Ex parte Steckler, 179 La. 410, 154 So. 41, at page 44, reviewed and· discussed at length the authorities pro and con as to the scope and power of admissions and held that a constitutional provision was not intended to deprive the legislature of authority to fix standards for admission, which, however, could only be minimum and that enactments purporting to require admission to holders of degrees from law schools in Louisiana were violative of the court's power to ultimately prescribe the qualifications for admission to the bar, and buttressing its conclusion on authorities reviewed herein and others. This case has been noted with approval in Meunier v. Bernich, supra, 170 So. at page 574; Petition of Florida State Bar Ass'n, supra;

Louisiana State Bar Ass'n v. Leche, 201 La. 293, 9 So.2d 566; In re Mundy, 202 La. 41, 11 So.2d 398 at page 400; In re Tracy, supra, 266 N.W. at page 92; Clark v. Austin, 340 Mo. 467, supra, 101 S.W. 2d at page 992; In re Bozarth, supra, 63 P.2d at page 729.

In re Opinion of the Justices, 279 Mass. 607, 180 N.E. 725, 728, 81 A.L.R. 1059, in an advisory opinion authorized by the Massachusetts constitution, held a proposed legislative act requiring examination papers to be graded solely by bar examiners, to usurp the function of the judiciary and violative of Art. 30, Declaration of Rights, Vol. 10, Ann.Laws of Massachusetts, 1933,[3] the reasoning being pertinent herein:

"The pending bill is in amendment of a part of the statutes mainly designed to aid the judicial department in the performance of its duty as to the admission of attorneys at law to practice in the courts. The pending bill, in form prohibitory, is also mandatory. It in substance requires that, if written examinations are held for ascertaining the fitness of applicants for admission to the bar, the marking of such examination papers must be done by members of the board of bar examiners. It is an explicit direction as to a means of finding out the qualifications of petitioners for admis-

[3] "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men." Vol. 10, Ann. Laws of Mass.1933, p. 41.

sion to the bar. It does not state qualifications or prescribe conduct without which one may not become such petitioner; it does not even apply to such petitioners. It is not a mere limitation upon the powers of an instrumentality created by the Legislature to assist the court. It deals solely with the exercise of the judicial function, namely, discovery of the fact whether each applicant is sufficiently learned in the law to be admitted to practice as an attorney at law. The provisions of the pending bill fall within the same class as would proposed statutes fixing the passing marks for admission to the bar, the branches of law on which applicants should be examined, the number of questions to be asked, the length of time to be devoted to examinations, the tests of moral character to be adopted and the means for meeting those tests, and other like matters. If subjects similar to these were held to be within legislative cognizance, it would be vain to say that final power over admission to the bar was within the control of the judicial department of government. Whether the examinations of applicants for admission to the bar shall be wholly written, or wholly oral, or partly written and partly oral, is a matter for final determination by the judicial department. So, also, is the relative weight to be attributed to the results of written and oral examinations. If the judicial department decides that the marking of the written examinations may be performed by competent persons not members of the board but acting under the direction of such members, that pertains directly to the ascertainment of the qualifications of applicants. It is a definite attribute of the judicial department and not an immaterial incident. The pending bill is different in its fundamental conception from many statutes indubitably valid, wherein practice and procedure both civil and criminal, rules of evidence, and substantive provisions of law have been altered. Statutes of that nature fall within the classification of wholesome and reasonable laws within the grant of power to the General Court to enact under the Constitution, and do not impinge upon the powers allotted to the judicial department. They are distinguishable in essential features from the pending bill, which directly affects the capacity of the judicial department to function." In re Opinion of the Justices, supra.

In re Opinion of the Justices, 289 Mass. 607, 194 N.E. 313, follows such principle, holding the legislature may not permit certain corporations and associations to practice law. The scope of the above holding is amplified and further explained in In re Keenan, 313 Mass. 186, 47 N.E.2d 12; approved in Matter of Stern, 299 Mass. 107, 12 N.E.2d 100; Land Title Abstract & Trust Co. v. Dworken, 129 Ohio St. 23, 193 N.E. 650; 114 A.L.R. 152-160-176; Rosenthal v. State Bar Examining Committee, 116 Conn. 409, 165 A. 211, 87 A.L.R. 991; Petition of Florida State Bar Ass'n, supra; De Kras-

314

ner v. Boykin, 54 Ga. 29, 186 S.E. 701; Ex parte Steckler, 179 La. 410, supra; Meunier v. Bernich, La.App., supra; In re Tracy, Minn., supra; considered as to inherent powers of courts in Ex parte Thompson (Ala.), 152 So. 229; In re Richards, 333 Mo. 907, 63 S.W.2d 672; Clark v. Austin, Mo., supra 101 S.W.2d at page 991; Brummitt v. Winburn, 206 N.C. 923, 175 S.E. 498; Norfolk and Portsmouth Bar Ass'n v. Drewry, 161 Va. 833, 172 S.E. 282; State v. Perkins, 138 Kan. 899, 28 P.2d 765 at page 769; Ralston v. Turner, 141 Neb. 556, 4 N.W.2d 302 at page 308, 144 A.L.R. 138; State v. Greathouse, 55 Nev. 409, 36 P.2d 357; In re Bozarth, Okl., supra; In re Integration of State Bar of Oklahoma, 185 Okl. 505, 95 P.2d 113; In re Bledsoe, 186 Okl. 264, 97 P.2d 556 at page 557; Integration of Bar Case, 244 Wis. 8, 11 N.W.2d 604, 12 N.W.2d 699, 151 A.L.R. 586. See Graustein v. Barry, 315 Mass. 518, 53 N.E.2d 568. The general statements in In re Platz, 60 Nev. 296, 108 P.2d 858, are not supportive of the statute herein.

In re Bledsoe, Okl., supra, squarely held a statute such as herein was invalid, relying on Opinion of Justices, 279 Mass. 607, 180 N.E. 725, 81 A.L.R. 1059, supra, In re Day, 181 Ill. 73, 54 N.E. 646, 50 L.R.A. 519, supra, and others thus [186 Okl. 264, 97 P. 2d 558]:

"In the light of the authorities to which we have referred, which clearly represent the overwhelming weight of authority, the above quoted legislative Act cannot stand. Insofar as section 4 of the Act is concerned the same does not purport to set out minimum qualifications, but instead fixes a maximum qualification and removes from the court the power to determine whether or not a certain group or class of persons possess qualifications which entitle them to admission to the Bar. The Act of the Legislature has the effect of attempting to qualify certain persons for admission to the Bar, which is in excess of the legislative power."

In re Olmsted, 292 Pa. 96, 140 A. 634, holds the powers to regulate admissions belong to the judicial department and not the legislative.

Creditors' Service Corp. v. Cummings, 57 R.I. 291, 190 A. 2, 8, quoting from Opinion of Justices, Mass., supra, held:

" * * * In the exercise of this power, (of judiciary) the Legislature may properly enact a statute designed to protect the public against imposition, incompetency, and dishonesty, but it has no power to pass a law granting the right to any one to practice law."

In re Levy, Wash., supra, condemned a statute authorizing admissions without examination.

In re Cannon, 206 Wis. 374, 240 N.W. 441, held the legislature could not reinstate a disbarred attorney, but accedes to a statute granting the diploma privilege. In re

Admission of Certain Persons to the Bar, 211 Wis. 337, 247 N.W. 877.

Alabama, Arkansas, Florida, Iowa, Mississippi, South Carolina, South Dakota, Texas and West Virginia have similar diploma privilege statutes. Rules for Admission to the Bar, 1949, West Publishing Company.

 From a careful and comprehensive analysis of all the above authorities, which include most if not all of the authorities cited by respective counsel and which are closely enough in point to require consideration, the following rules seem to be deducible: First, that the process of admitting to the bar comprehends fixing standards as to mental and scholastic qualifications and determining whether the applicant possesses such requirement; second, that the exercise thereof is a judicial function, inherent in the courts; and third, the legislature may enact valid laws in aid of such functions and may, if in furtherance thereof, fix minimum requirements, but in no event, maximum; and may not require the courts to admit on standards other than as accepted or established by the courts, and that any legislation which attempts to do so is an invasion of the judicial power and violative of the constitutional provisions establishing the separate branches of government and prohibiting the legislature from invading the judiciary. That the statute herein, therefore, so offends and cannot be sustained is plainly indicated by In re Day, Ex parte Steckler, Ralston v. Tur-

ner, In re Bledsoe and In re Levy, supra. The applications are denied.

HOLDEN, C. J., PORTER and TAYLOR, JJ., and KOELSCH, District Judge, concur.