572 P.2d 887

**Daniel C. WHITE, SSA 536 48 7127, Claimant-Appellant,**

v.

**IDAHO FOREST INDUSTRIES, Employer,**

**and**

**Department of Employment, Defendants-Respondents.**

**No. 12487.**

Supreme Court of Idaho.

Dec. 28, 1977.

Raymond C. Givens, Idaho Legal Aid Services, Inc., Coeur d'Alene, for claimant-appellant.

Wayne L. Kidwell, Atty. Gen., R. LaVar Marsh, Deputy Atty. Gen., Roger B. Madsen, Asst. Atty. Gen., Boise, for defendants-respondents.

BISTLINE, Justice.

Claimant White was a member of the stand-by crew at Idaho Forest Industries (I.F.I.). Permanent workers have various privileges regarding absences from work. In the nature of things, stand-by workers have no such privileges, and are expected to be on-call at all times. White was discharged in June, 1976, on the grounds that in one week he had twice failed to report for work when called to replace absent workers. White applied for unemployment compensation benefits and was denied, both at the determination and redetermination stages, because he was found to have been discharged for "misconduct" in connection with his employment.

White appealed these adverse decisions and prevailed before the Appeals Examiner who ruled on September 24, 1976, that claimant's unemployment was not due to discharge for misconduct in connection with his employment. This decision, in turn, was appealed on October 1, 1975, by the Gibbens Company, who represented I.F.I. throughout those proceedings. The appeal hearing was scheduled for November 18, 1976.

White himself, as the Commission noted in its order, did not attend. The Commission's order of December 13, 1976, reversed the ruling of the Appeals Examiner, not by holding that White *was* guilty of "misconduct," but on the previously unmentioned grounds that White had "failed without good cause to accept suitable work when offered."

I.

On appeal, White argues that the notice served upon him regarding the hearing before the Industrial Commission did not put him on notice that the Commission might hear new evidence and might determine his eligibility on the basis of a theory which had never been raised below. As such it failed to comply with statutory and constitutional requirements.

In its notice of appeal, which was by means of a letter, filed on behalf of I.F.I., Gibbens Company stated:

> We respectfully request the Commission's review of the above case. We believe claimant's separation was for misconduct in connection with the work.

> We plan to appear before the Commission with new evidence that is pertinent to this case.

Gibbens Company did not have the kindness to favor White with a copy of this letter. The notice which the Commission served upon White did not inform him that Gibbens Company intended to put on new evidence before the Commission.[1] Neither did it inform him that the issue on which he had prevailed below might not prove dispositive if the Commission, faced with new evidence, chose to allow or interject a new issue into the proceedings. On the contrary, the notice states that the claimant *need not attend* the hearing before the Commission if he is satisfied to rest upon the record created below:

> If you do not intend to present additional evidence, then attendance is not compulsory. The Commission must, in any event, review the record as transmitted by the agency. This record includes any testimony taken by the agency. If no appearances are made, the Commission will make its decision on that record. *If you have no additional evidence to submit and are willing to have the matter reviewed on the record as it is,* please so

1. Unlike most appeal situations where new evidence would not be allowed, I.C. § 72–1368, states only that the Commission "is not precluded in any way from receiving any additional evidence." This section is not a carte blanche allowing the Gibbens Company the unbridled right to present a substantially new case, absent some showing as to why the evidence had been unavailable earlier.

notify the Industrial Commission at as early a date as possible. (Emphasis added.)

Having no new evidence to present, and having prevailed "on the record as it is," and not being informed that Gibbens Company intended to introduce new evidence, White could hardly be expected to, and did not, attend. Such a notice violates the express requirements of the Idaho statute governing the type of notice which must be served upon parties to Commission hearings:

> Notice of hearings—Service.—The commission shall give at least ten (10) days' written notice of the time and place of hearing *and of the issues to be heard,* either by personal service or by registered or certified mail. (Emphasis added.) I.C. § 72–713

In this case, the notice contains no mention of the precise issue to be heard before the Commission, much less the Commission's intent to raise the issue of failing to accept suitable work, which, to that date, had never arisen at all.

A similar situation was reviewed in *Publishers Paper Co. v. Morgan,* 10 Or.App. 94, 498 P.2d 798 (1972). In that case, the claimant left work when he reached the mandatory retirement age specified in his collective bargaining agreement. The referee declared him ineligible as having left his work "voluntarily" and without "good cause." The Employment Appeals Board reversed and held that the worker "was involuntarily separated from his work." In so ruling, the Appeals Board refused to pass upon other issues which the petitioner (employer) attempted to raise for the first time at that level. The Oregon Court held that issues which had not been raised by the employer in its request for hearing, and of which the employee had not been notified, could not be raised for the first time before the Board:

> . . . the Request for Hearing filed by petitioner [employer] was on the sole basis that the claimant was not discharged but "was retired under a compul-

sory retirement program sponsored by his union." Furthermore, the Notice of Hearing issued pursuant to that request stated only that the

> "ISSUES ARE:
>
> " * * *
>
> "(2) ORS 657.176(1) or (2). Whether claimant's unemployment is due to having voluntarily left work without good cause or was discharged for misconduct with the work.
>
> " * * * "

Neither the Request for Hearing nor the notice thereof contended that the claimant was ineligible under ORS 657.205 [the equivalent of I.C. § 72–1368(g) which grants the Commission the right to hear "additional evidence" on appeal] or any other provision of the law, as the employer now contends. We think it follows that under those circumstances *neither the Hearing Officer nor the Board had jurisdiction to consider grounds not asserted in the Notice of Hearing nor in the Request for Hearing.* (Emphasis added.) 498 P.2d at 801.

Idaho case law, though it has developed in other contexts, is equally insistent that an administrative tribunal may not raise issues without first serving the affected party with fair notice and providing him with a full opportunity to meet the issue. *See, Intermountain Gas Co. v. Idaho Public Utilities Com'n,* 97 Idaho 113, 540 P.2d 775 (1975); *Washington Water Power Co. v. Idaho Public Utilities Com'n,* 84 Idaho 341, 372 P.2d 409 (1962). The order of the Industrial Commission, because it rests upon an issue of which the claimant had no fair notice, violates the due process requirements of this State's Constitution, Idaho Const. art. 1, § 13, and must be reversed.

## II.

The Department of Employment on appeal admits the inadequacy of the Industrial Commission's notice. It contends, nonetheless, that the case should be re-

manded for further proceedings.[2] It seeks leave, on remand, to attack White's eligibility on three grounds: (1) refusal without good cause to accept available, suitable work when offered; (2) voluntary quit; and (3) misconduct in connection with work.

None of these three defenses finds support in the record below. The Industrial Commission found, as a matter of fact, that when White "was informed by the employer [that] full-time work was available beginning that evening," he

. . . inquired as to whether he could start work the following night. The employer representative, Eileen Camp, who was the payroll clerk and in charge of notifying members of the stand-by crew, said he could report for work the following night as far as she was concerned. However, when Mrs. Camp reported the situation to Edward Shields, the supervisor, it was decided another individual would be offered the permanent job and claimant would be terminated. Mr. Shields orally notified claimant of the decision the following day and two weeks later written notification of the decision was given.

White was offered full-time employment because of his seniority on the stand-by crew. Mrs. Camp testified: "We do this for all our stand-by guys who are good workers and Dan was a good worker." The testimony before the Appeals Examiner indicated that White was, indeed, a good worker; that on one occasion, he had worked a string of 14 straight night shifts; and that he was most anxious to obtain full-time employment. Far from refusing without good cause to accept available and suitable work when offered, White had sought it out and accepted it when offered. In the process, however, he requested permission to begin work one night later because of a long-standing church benefit dinner that he had promised to attend. Mrs. Camp, the only I.F.I. office personnel with whom White spoke, and from whom he ordinarily

received his work schedule instructions, stated that she could get a substitute for him that night, which he took as an assurance that he could begin full-time work the following night. Mr. Shields, I.F.I.'s departmental supervisor, reversed this decision and fired White because of his absence. Shields himself admitted that he had "never seen the guy before in my life" but relied upon the opinion of Gordon Amos, the night foreman. Amos, in turn, testified before the Appeals Examiner that he had never talked to Shields "concerning the work record or anything else of Mr. White." All parties admitted that they made no attempt to inform White of their decision until the following day, and that he had not been told that a condition of the full-time job was that he commence work on the evening in question.

We find that White's conduct under these circumstances could not amount to a "refusal without good cause to accept available, suitable work when offered" because it was not a refusal at all. Nor could it amount to "misconduct" in connection with work for the purposes of the Employment Security Act. *Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976). Finally, with regard to the issue of "voluntary quit," the Department of Employment relies upon the case of *Oliver v. Creamer Heating & Appliance,* 91 Idaho 312, 420 P.2d 795 (1966), for the proposition that stand-by workers must be available at all times. This is true, but that case here cuts the other way because this claimant fulfilled precisely the conditions the Court found mandatory in the *Oliver* case, namely, that the worker ascertain from his employer that his absence was permitted, despite his on-call status.

We conclude, therefore, that the determination of the Industrial Commission should be reversed and that there is no need for any further proceedings on remand.

2. It should be noted that the position of the Department before this Court is inconsistent with the position it took before the Commission where it appeared on behalf of the employee and in defense of the determination of its own appeals examiner.

### III.

■ White represented himself in all proceedings up to the taking of the appeal to this Court. Here he has the services of counsel from Idaho Legal Aid Services, Inc. Said counsel has requested attorney's fees, pursuant to D.O.E. Regulations, art. V, § 7(B)(2). At oral argument before this Court, counsel for the D.O.E. stipulated that the Department's regulations authorized the award of attorney's fees to claimant's counsel. Two weeks later, however, he changed his position and, in a letter to the Court, argued that fees should not be paid in this case because Idaho Legal Aid is "a public service oriented legal organization subsidized by the tax payers" and it therefore "seems inappropriate for one government agency to pay legal fees to another government agency." This bare policy statement is unaccompanied by any supporting case law. It finds no support in the pertinent federal regulations which provide that legal aid corporations may receive attorney's fees while striving to provide "appropriate and effective legal assistance" to eligible clients so long as the receipt of such fees does not place the corporation in competition with local private attorneys. 45 C.F.R. 1609.1. Neither does it find support in the Department's own regulations which provide for the award of attorney's fees to attorneys representing claimants on appeal to the State Supreme Court from a decision which reverses a prior decision in their favor. Here, claimant White prevailed before the D.O.E. Appeals Examiner. The Industrial Commission reversed that decision. His appeal to the Supreme Court is thus "from a decision which reverses a decision in his favor." D.O.E. Regulations, art. V, § 7(B)(2). Under such circumstances, we have awarded attorney's fees. *Rehart v. D.O.E.*, 98 Idaho 549, 568 P.2d 522 (1977). We see no reason to apply a different rule in the present instance.

### IV.

■ In our perusal of this record, our curiosity was naturally aroused as to the identification of the "Gibbens Company."

Idaho Forest Industries is, of course, the employer. Throughout these proceedings it has taken no part whatever, but has been represented by the Gibbens Company. The Gibbens Company has prepared and signed pleadings, introduced evidence, examined and cross-examined witnesses and, in general, held itself out as able to advise on and to prosecute a contested claim.

The Gibbens Company wrote the "appeal letter" which caused the Commission to assume jurisdiction, and which led to the overturning of a D.O.E. departmental final decision in White's favor. We received no brief in this cause from the employer, nor from the Gibbens Company. At oral argument the employer was neither present nor represented. The Gibbens Company was conspicuous by its absence. The functions engaged in by the Gibbens Company may well be within the exclusive province of licensed attorneys. At oral argument, we were informed by counsel for the Department that the Gibbens Company employee who performed these tasks is not a licensed attorney. If that is so, obviously there may well be a violation of I.C. § 3–104 and its prohibition against practicing law without a license. *Idaho State Bar v. Meservy*, 80 Idaho 504, 335 P.2d 62 (1959). The fact that the practice here is before an administrative rather than a judicial body does not make it any less unauthorized. Annot., 2 A.L.R.3d 724 (1965). We are therefore directing that the Idaho State Bar make a complete investigation and take such action as is appropriate. An order will issue. *See Kentucky State Bar Association v. Henry Vogt Machine Company, Inc.*, 416 S.W.2d 727 (Ky.1967).

The decision of the Commission is reversed with instructions to reinstate the final determination of the Department of Employment. Costs and attorney fees are awarded to claimant.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.