690 P.2d 318

**Bradley DiIORIO, Claimant-Respondent,**

v.

**POTLATCH CORPORATION,**
Employer-Respondent,

and

**Idaho Dept. of Employment, Appellant.**

No. 14968.

Supreme Court of Idaho.

July 19, 1984.

Rehearing Dismissed Oct. 11, 1984.

---

Raymond C. Givens, Coeur d' Alene, for claimant-respondent.

Jim Jones, Atty. Gen., Larry F. Weeks, Deputy Atty. Gen., Boise, for Department of Employment.

Mike McNichols, Orofino, for employer-respondent.

BAKES, Justice.

The Department of Employment has filed an appeal to this Court from an order of the Industrial Commission, which dismissed an appeal taken by the employee-claimant from a decision of an appeals examiner of the Department of Employment. The employee-claimant has not filed a notice of appeal to this Court from the Industrial Commission's order dismissing the appeal. However, the Department of Employment, which did not appeal to the Industrial Commission from the original order of the appeals examiner and which did not appear at the hearing held before the Industrial Commission on December 14, 1982, on claimant's appeal, nevertheless filed this notice of appeal to this Court from the Industrial Commission's dismissal of the claimant's appeal, even though the claimant himself has not appealed.

The respondent employer filed a motion to dismiss the Department of Employment's appeal asserting that the department, which did not appeal to the Industrial Commission from the original order of the appeals examiner or appear at the hearing held before the Industrial Commission on December 14, 1982, was not a "party aggrieved by an appealable ... order ... of ... the ... Industrial Commission," I.A.R. 4, and therefore was not entitled to appeal to this Court from the order of the Indus-

trial Commission dismissing the claimant's appeal.

Although the Department of Employment did not appeal to the Industrial Commission from the decision of the department appeals examiner, and did not participate in the hearing before the Industrial Commission, a representative of the Attorney General's office assigned to the department apparently did appear at a hearing on a motion for reconsideration filed by the claimant before the Industrial Commission. The record does not reflect any written appearance filed before the Industrial Commission by the Department of Employment, however. Had the Department of Employment participated in the hearing before the Industrial Commission, and then appealed from a ruling adverse to its interests, it would be a different matter. However, having chosen not to participate in the Industrial Commission proceeding until after the trial was over and a decision on the merits having been rendered by the Industrial Commission apparently adverse to the department's interests, it is too late for the department to claim status as a "party" for the purposes of this appeal, particularly where, as here, neither the claimant nor the employer has appealed from the ruling of the Industrial Commission.

Appeal dismissed.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, Justice, dissenting with whom BISTLINE, Justice, concurs.

Members of the bar who have had the experience of presenting themselves physically in a courtroom several times will no doubt be amazed at the majority decision herein, should they pause to analyze the real basis of the dismissal of the Department of Employment's appeal.

The majority opinion is somewhat unclear as to the specific basis for the dismissal of the Department's appeal. The key to the majority's concern is reflected in the following two sentences from the majority opinion:

The record does not reflect any written appearance filed before the Industrial Commission by the Department of Employment, however. Had the Department of Employment participated in the hearing before the Industrial Commission, and then appealed from a ruling adverse to its interests, it would be a different matter.

The Department of Employment was physically represented and appeared by and through its attorney at the hearing on motion for reconsideration. The record further establishes that it has been the standard procedure for the Department to appear before the Commission on these matters without filing a formal written appearance. No party objected to the Department appearing and participating before the Commission without having first filed a "written appearance." Since no objection was made, and the Commission having accepted the attorney's appearance "in court", no appealable error was preserved. Presumably, had either another party or the Commission raised an objection, the hearing would have been delayed for five minutes while the Department attorney phoned his secretary to bring over a "piece of paper" constituting a formal appearance.

It has not been unheard of for a party defendant, in a trial court proceeding, to appear at the trial without having first filed an answer or other responsive pleading, and participate in the proceedings. No one would assert that such a party had not appeared and become a party for all purposes for all purposes because no written document connoting an appearance was formally filed.

In *Newbold v. Arvidson*, 105 Idaho 663, 672 P.2d 231 (1983), the issue before the court was whether a party had made "an appearance" by virtue of having participated in a deposition. This court in a four to one opinion, wrote:

The question is whether the defendant's presence and self-representation at the deposition constitutes an "appearance" pursuant to I.R.C.P. 55(b)(2). We hold that it does. Since Mr. Arvidson

was not given notice as required by I.R.C.P. 55(b)(2), the default judgment is voidable, and should be set aside where a meritorious defense is shown.

Today's majority apparently would prefer not to accept the law of Idaho as enunciated just ten months ago in *Newbold, supra,* by four members of this Court.

Apparently, although the gentleman, the attorney for the Department, was physically present before the Commission and participated without objection of counsel, we now rule that he did not "appear"—the gentleman was an apparition?

BISTLINE, Justice, dissenting, with whom HUNTLEY, Justice, concurs.

Bradley DiIorio, according to the record before us, is not a kennel dog; he works while attending college, and he works during summer vacation. Here he was employed by Potlatch during the summer of 1981 as an assistant to a millwright from May 19 until August 18. On May 25, 1982, he applied for benefits under the Employment Security Law, stating that he was "hired for my summer vacation—worked until I had to return to school." The Department apparently sent a copy of his application to Potlatch. That copy is found in the record, and bears the "received" date stamp of The Gibbens Co., Boise, Idaho. Apparently, a card or stamp placed over it is this printed information:

**As employer's agent, we ask all notices or inquiries on this claim be mailed to:**

**THE GIBBENS CO., INC.**

P.O. Box 8222    BOISE, IDAHO 83707
Phone 343-3000

The Employer's Statement is a check in a box indicating that claimant voluntarily quit, plus the handwritten statement that "claimant voluntarily quit to go to school." The Statement is signed, "Potlatch Corporation, by its Authorized Representative, Kathy Anderson." A claims examiner for the Department summarily declared Mr. DiIorio ineligible: "Attendance at school, though personally rewarding, has not been proven so compelling that it leaves the worker with no choice but to leave suitable

work." Mr. DiIorio signed and filed a form Request for Redetermination, stating:

"Potlatch Forest Industries has this summer vacation employment program. The program in Lewiston at the mill only hires those kids which are college students. Before they will let you work the summer vacation for them, they make sure you are going to be attending a higher education facility the next fall of the same year. The program also denotes that the employee is going to be a full time student at the college. Lewiston's program also hires that employee for the next four consecutive summers, if he promises at the start of each summer that he is going to attend a college in the fall. Thus, the Lewiston program is only a college student job and the program is set up to compliment the time of a student's completion of that year's term of college and the program ends with the student's return to the start of his next college years' start. I left my summer employment at the start of next college year at the University of Idaho, with the approval and required conduct of the Lewiston Potlatch summer employee program."

Departmental Exhibit No. 5.

A copy of the form upon which the foregoing is found bears the Gibbens Co. received stamp. That same form contains a place for the Employer's Reply, which was only this bare-bones conclusory statement: "Claimant voluntarily quit, work was available for at least another month.": It was signed Potlatch Corporation by a Kathy Anderson.

The request for benefits was now granted:

"In protest of your ineligibility, you state that Potlatch Forest Industries has a summer vacation employment program. They only hire college students. You left your summer employment at the start of the next college year, which is part of this program. You state even if you had not returned to school, your

employment would have ended due to the program you were hired on.

"Your employer responded that you voluntarily quit. Work was available for at least another month.

"Good cause for leaving employment can be defined as something so compelling that the worker is left with no other reasonable alternative.

"You quit for school on Aug. 18, 1981. You were to have been laid off a month or so later. You filed your claim on May 25, 1982. Therefore, it is determined that you became unemployed due to lack of work as you would have been unemployed at this time anyway.

"Benefits are allowed effective May 23, 1982 and the determination of June 7, 1982, is reversed."

An immediate response was forthcoming from Kathy Anderson, which served also to identify her:

---

## The Gibbens Co., Inc.

Unemployment Tax Control
P O Box 8222
Boise, Idaho 83707
(208) 343-3000

Offices
Coast to Coast

*8 pg. 2*

June 29, 1982

Department of Employment
202 Anton Avenue
Coeur d'Alene, ID  83814

Re:  Bradley Di Iorio
     SSA# 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

Gentlemen:

We disagree with the redetermination dated June 24, 1982, holding the claimant eligible for benefits.

We request an appeal hearing.  Please advise us of the date and time.

Very truly yours,

POTLATCH CORPORATION
by THE GIBBENS CO., INC.

*Kathy Andersen*

Kathy Andersen
Office Manager

JUL - 1 1982

Kathy Anderson "appeared" (personally and as counsel for Potlatch) at the hearing before the Department appeals examiner, Leitha Miller, where Kathy Anderson cross-examined Mr. DiIorio, and also produced and questioned on direct examination one Potlatch employee. Offered the opportunity to summarize Potlatch's case, she did so:

"[HEARING OFFICER] Q. All right. Would you like to add anything before I close the hearing, Mr. Di Iorio?

"BRADLEY Di IORIO: Um, no.

"Q. Kathy Anderson?

"KATHY ANDERSON: Yes. In making your decision I would like to request that you consider the Supreme Court case of *Brad Anderson vs. Brigham Young University;* this decision was filed December 5, 1980. There is a section in there uh, I would like to quote, it said, 'The sole issue presented is whether claimant/respondent was barred from unemployment benefits provided that his unemployment is not due to the fact that he left his employment voluntarily without good cause as defined by case law. The Commission erroneously utilized the time of application for benefits rather than the time at which the employment was terminated.' We feel that this particular paragraph in this decision is pertinent to Mr. Di Iorio's case in referring to the redetermination where the examiner has said in the second to the last paragraph, 'You quit for school on August 18, 1981. You were to have been laid off a month or so later. You filed your claim on May 25, 1982. Therefore, it is determined that you became unemployed due to lack of work as you would have been unemployed at this time anyway.' We do not feel that in this redetermination decision the actual separation date was taken into effect. We feel that the ruling was made on the time he filed his claim which we do not feel is correct accordingly to the Supreme Court decision.

"EXAMINER: All right. With that then, the hearing is closed."
Tr., pp. 16–17.

Kathy Anderson won; Bradley DiIorio, appearing *pro se,* lost and thereafter obtained counsel to continue his battle against the Gibbens Co., and its client, Potlatch.

Mr. DiIorio, who may or may not have been entitled to prevail had the Commission heard his appeal, for certain lost his benefits at the hands of a Kathy Anderson, who, with her ostensible employer, freely continues to practice law in Idaho, *see Cornwell v. Kootenai County Sheriff,* 106 Idaho 823, 683 P.2d 823 (1984) (Bistline, J., dissenting), and *see also White v. Forest Industries,* 98 Idaho 784, 788, 572 P.2d 887, 889 (1977). It would seem that should a majority of this Court sustains the Commission's unseemly dismissal of the appeal taken to it by dismissing the appeal brought to this Court, then the unfortunate Mr. DiIorio may find better fortune in the district courts of this state by pursuing those who may have illegally interfered with his rights.

## II.

Noting first that I have concurred in the opinion of Justice Huntley, it is necessary only that I add a few remarks of my own.

The Department of Employment administers the employment security law. By statutory definition the director of the Department, or his duly authorized representative, is an interested party. I.C. § 72–1323. We have had pointed out to us on numerous occasions[1] that the legal division of the Department remains aloof of the administrative handling of claims, and that only in proceedings before the Commission and the Supreme Court does it become involved—and then only in order to assure that the Employment Act is properly and fairly administered—which is, of course, the obligation of any agency of government. The Department, and now we are considering the legal division, seeks to keep to a minimum the payment of benefits to those not

---

1. *See Bullock v. C.I.T. Co.,* 106 Idaho 767, 683 P.2d 415 (1984), (Bistline, J., dissenting, n.12).

entitled, and it likewise maintains a purpose to see that those entitled to benefits be not deprived of them. In this case, as is my understanding, the Department's concern is not that the claimant prevail, but that he at least have his day in court, and that any claimant not be turned away on mere technicality which has nothing to do with the merits of the claim.

In this case it does appear that legal counsel for the Department did not initially take part in what appeared to be a clear-cut case for or against the allowance of benefits. Examiners for the Department had ruled against claimant, for claimant, and against claimant. The issue is one of law, with no dispute of fact. At proceedings before the Commission no new testimony is taken without an advance request. It appears that when Commissioner Defenbach convened the hearing at Coeur d'Alene, there was some dispute as to whether any additional testimony would be allowed—which was not resolved because of the Commissioner's ruling that he was dismissing the appeal. The issue being one of law, there was no reason whatever for the Department *to* participate and spend state money in sending an attorney to Coeur d'Alene to attend the hearing. But, it was nonetheless a statutory party. And, on the occurrence of the strange turn of events which took place at the hearing, it was very much a proper party to move the controversy on to this Court. I have seen no reason advanced otherwise. Any time the Department sees the Employment Security Act being thwarted or misused whether to the disadvantage of an employer or to the claimant, it is certainly an aggrieved party. Claimants may come and go, employers may come and go, but the Act and the administration of the Act go on forever. A rare injustice to an employer, and even frequent injustices to the claimants can be tolerated. No administrative system is perfect. But the Department remains charged with *its obligation* to operate the system as *it believes* best. Anytime the Commission or this Court short-circuit the Department of Employment system, the Department is an aggrieved party. This Court can and should oversee the Commission, and in doing so, must be extremely vigilant, because, it is only on rare occasions that our work product is going to be in turn reviewed.

In conclusion, and touching again on Justice Huntley's views, I add only that the Department's Memorandum in Support of Claimant's Motion for Reconsideration was filed by the Commission, and importantly, that the employer did not move to strike it. Obviously it was considered, being a part of the record, and having been filed within six days (December 29, 1982) after claimant filed the motion. Excluding holidays, the Commissioner's order (January 4, 1983) was not based on excessively long deliberation. The Commission more wisely would have favored us with its views and its reasons for rejecting the contentions of the Department. I find it incomprehensible that a majority of this Court has determined to avoid making the same discussion. It is all the more deplorable that it is done on the pretense that the Department cannot appeal because it did not "appear" before the Commission—if such be indeed the holding today.

In *R.H. Pierce Manufacturing Corp. v. Continental Manufacturing Co., Inc.*, 106 Idaho 342, 679 P.2d 142 (1984), only Continental appeals. Pierce did not, but we recognized that it was a party, and wonderfully—compared to what we do today—our resolution was that Pierce and Continental would thereafter fight for the spoils. Pierce not only did not appeal, but did not "appear" in this Court.