707 P.2d 378

Michael G. KYLE, SSA 519 56 4580,
Claimant-Respondent,

v.

BECO CORPORATION,
Employer-Appellant,

and

Grover Trucking, Employer-Respondent,

and

State of Idaho, Department of
Employment, Respondent.

Michael G. KYLE, SSA 519 56 4580,
Claimant-Respondent,

v.

BECO CORPORATION,
Employer-Appellant,

and

State of Idaho, Department of
Employment, Respondent.

No. 14940.

Supreme Court of Idaho.

May 7, 1985.

Rehearing Denied Oct. 31, 1985.

Mark R. Fuller, Idaho Falls, for employer-appellant, Beco Corp.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Carol Lynn Brassey, and Roger T. Martindale, Deputy Attys. Gen., Boise, for respondent Dept. of Employment.

Teresa L. Sturm and Gregory L. Crockett, Idaho Falls, for claimant-respondent Michael G. Kyle.

Grover Trucking, employer-respondent, pro se.

Barbara J. Miller, Boise, for Idaho State Bar, amicus curiae.

SHEPARD, Justice.

This appeal from the Industrial Commission involves issues of employee misconduct; voluntary termination of employment by the employee for good cause; and validity of the commission's rules regarding non-attorneys' appearances on behalf of corporations in administrative proceedings. We affirm the holding of the Industrial Commission, that claimant is entitled to unemployment compensation and that the employer corporation is not entitled to have a lay representative act as its attorney during the commission's proceedings.

Although the employer challenges the findings of the commission as being unsupported by the evidence, we view the commission's holding on the facts as being exceptionally well-supported and we therefore affirm it in full.

The claimant first began working for the Beco Corporation in July 1981. Beco is a general contractor specializing in environmental landscaping and reclamation, building campgrounds, parks, and playgrounds. Claimant left work at Beco in September but returned in November 1981. Claimant's work at Beco involved driving trucks, operating equipment, and doing general labor. His wage ranged between $7.50 and $13.00, depending on the prevailing rate for the particular work he was doing; since Beco was handling federal contracts, it was obligated to pay its employees the prevailing wage, according to the type of work done.

In December 1981, claimant began working on a Beco project in Utah. The project was discontinued in January 1982, because of weather conditions, and claimant was reassigned by the company to Idaho Falls to do shop work, including cutting wood, shoveling snow, maintaining equipment, and doing general cleaning. Beco intended this assignment as temporary and planned to return its employees to regular work upon the weather conditions' improving. Claimant worked for two days before being told he was only earning $3.35 per hour. Beco offered claimant unlimited working hours, in order to render him ineligible to collect unemployment compensation.

Upon learning that he was being paid only $3.35 per hour, claimant attempted to negotiate with his employer for either a higher salary or a part-time position which would allow him to collect supplemental unemployment benefits. The employer refused to give him either, and claimant then voluntarily quit.

Claimant filed for unemployment. The commission initially granted him benefits. The employer negotiated with the Department of Employment, and the parties reached an agreement whereby Beco rehired claimant into a half-time position at an hourly wage of $5.50.

Within a month after this rehire, Beco again fired claimant from his job. The commission made the following factual findings regarding the circumstances under which claimant's employment was terminated:

"Beck [president and sole stockholder of Beco] was not happy about paying the claimant $5.50 per hour when he was rehired. As a result of his irritation, he reemphasized to the claimant's supervisor Beco's policy that employees are warned for the first violation of company rules and discharged for the second. The claimant's supervisor told the claimant to be a model employee or he would be fired.

\*      \*      \*      \*      \*      \*

"One of Beco's rules requires that employees not report to work drunk, or with a hangover. During prior periods of employment with Beco in about 1980 and 1981, the claimant was warned about reporting to work drunk or with a hangover. On February 2, the claimant had a headache when he reported to work. He had consumed alcohol the previous evening. He had no nausea, dizziness, shakiness, or other hangover symptoms on February 2. He took some aspirin and his headache was gone after one to one and a half hours. His duties that morning consisted of cleaning up and rearranging an area of the shop where paint was stored. There was no evidence that the claimant's condition on February 2 affected his job performance.

\*      \*      \*      \*      \*      \*

"On about February 4, the claimant was approximately one minute late for work. On Beck's instructions the claimant was discharged on February 5. Beck asserted that the claimant was discharged for the following reasons: 1) his

attitude was negative and detrimental to an atmosphere of teamwork and comradeship; 2) he defied his immediate supervisor's authority; 3) he defied company rules by a) his presence at work hungover and/or drunk, and b) his continued tardiness without justification; and 4) he attempted to collude with his immediate supervisor for special treatment. The allegation regarding collusion with his supervisor had to do with the way the claimant's working hours were set. Beck was dissatisfied with the hours that the claimant was assigned, but there was no collusion between the claimant and his immediate supervisor. There was no evidence that the claimant ever defied his immediate supervisor's authority. There was some dissension among other employees because they were being paid minimum wage and the claimant was receiving $5.50 per hour. But the claimant worked well with his co-workers and there was no evidence that his actions on the job caused any dissension among other employees."

The commission found that the employer's proffered reasons for firing claimant were not credible, found that no misconduct had been proved, and awarded claimant his benefits.

The commission also noted that claimant's original decision to leave Beco's employ in January was justified and did not disqualify him from receiving unemployment compensation. The commission stated, in this regard:

"[T]he claimant left his employment when he found that his wages had been reduced to $3.35 per hour from $7.50 to $13.00 per hour. Such a drastic wage reduction (more than 50%) was a substantial adverse change in the conditions of the claimant's employment and it is a circumstance which would compel a reasonable person to leave his employment. Therefore, the claimant had good cause for leaving his employment on January 5, so he is eligible for unemployment benefits based upon that separation from employment."

■ Claimant is not eligible for unemployment compensation if, as provided under I.C. § 72–1366(e), he left employment voluntarily without good cause. The commission's holding, that claimant's voluntary decision to leave his employment was reasonable and for good cause under the meaning of this statutory language, must be viewed in light of *Burroughs v. Employment Security Agency*, 86 Idaho 412, 414, 387 P.2d 473 (1963), wherein this Court quoted the following from 81 C.J.S. Social Security and Public Welfare § 167, pp. 253–254 (1953) as persuasive:

"* * * In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive."

*Accord Ellis v. Northwest Fruit and Produce*, 103 Idaho 821, 654 P.2d 914 (1982). The commission's finding of claimant's good cause to voluntarily quit is reasonable and is supported by the evidence. We note also that this issue is arguably moot, the employer having agreed to settle it when it was first in dispute by rehiring claimant at a compromise wage.

The law relevant to the employer's termination of claimant's employment in February 1982 is also found in I.C. § 72–1366(e), which provides that a claimant is eligible for unemployment benefits, if the unemployment is not due to claimant's being discharged for misconduct in connection with employment. In *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957), this Court interpreted the statutory phrase "discharged for misconduct" as follows:

"While the term 'discharged for misconduct' as used in Sec. 72–1366(f) [now (e)], I.C. has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees.'"

*Cited with approval in Cornwell v. Kootenai County Sheriff*, 106 Idaho 823, 683 P.2d 859 (1984); *Bullock v. CIT Co. Federal Credit Union*, 106 Idaho 767, 683 P.2d 415 (1984); *Parker v. St. Maries Plywood*, 101 Idaho 415, 614 P.2d 955 (1980); *Ortiz v. Armour & Co.*, 100 Idaho 363, 597 P.2d 606 (1979).

■ The findings of the commission, both as to claimant's initial decision to leave Beco and as to Beco's termination of claimant following his rehiring, are amply supported by the testimony. Where the factual findings are sustained by substantial and competent, though conflicting, evidence, they will not be reversed on appeal. *Cornwell, supra; Bullock, supra.* The commission's finding, that the employer's stated reasons for terminating claimant were pretext and not borne out by the evidence, is not an abuse of discretion. The commission's holding that claimant left his job in January of 1982 for good cause and that he had not engaged in misconduct after rehire is affirmed.

We turn now to the employer's challenge of the commission's policy disallowing lay representation of corporate entities. Doyle Beck, president and sole shareholder of Beco Corporation, attended the Industrial Commission proceedings on behalf of the company and testified as a witness. However, his requests at the July 22, 1982 hearing, to cross-examine witnesses and present closing argument, were denied, pursuant to the commission's policy of not allowing non-lawyers to represent corporations at commission hearings. On December 27, 1982, Beco filed, through its attorney, a motion for a rehearing at which Beck would be allowed to represent the corporation. Beco argued that the commission then had no rule in effect which prevented a corporate officer or shareholder who is not admitted to practice law in any

state from representing the corporation. The referee denied the request for rehearing, and the commission adopted the referee's conclusions of law, which state in pertinent part:

"The Commission adopted new rules effective July 1, 1982, one of which restricts representation of corporations to attorneys. Arguably, this rule does not apply in these matters because they were appealed to the Commission before the rule became effective. However, before July 1, 1982, it had been the policy of the Commission for several years to require that corporations be represented by attorneys. In *White v. Idaho Forest Industries*, 98 Idaho 784, 572 P.2d 887 (1977), the Idaho Supreme Court directed the Idaho State Bar to investigate whether the Gibbens Company, which had represented Idaho Forest Industries, was engaged in the unauthorized practice of law. As a result of that investigation, the Idaho State Bar notified the Commission by a letter dated March 3, 1980, that business entities (other than individuals) must be represented by attorneys... Since that time, it has been the policy of the Commission to require that corporations be represented by lawyers. Thus, it would be improper to allow Doyle Beck to represent the corporation at a hearing.

\*       \*       \*       \*       \*       \*

"The Commission could grant that part of Beco Corporation's motion that asks for a rehearing (with the requirement that the corporation would be represented by an attorney), but the motion does not enumerate the evidence that Beco would present if the motion were granted. Therefore, Beco has not shown any need for a rehearing and the motion will be denied."

■ Beco Corporation by this appeal asks us to invalidate the commission's rule, or in the alternative, to hold that the rule does not apply to this case. Were we to grant this request, a new hearing in this matter would be necessary. Because we find the commission's policy, as enforced at the time of this case and as promulgated

by rule thereafter, to be a valid and reasonable exercise of the commission's discretion, we affirm the commission's holding that a corporation must be represented in the commission's proceedings, if at all, by an attorney.

■ The general rule among this and other states has been that representation of another person before a public agency or service commission constitutes the unauthorized practice of law, where the proceedings before those tribunals are held for purposes of adjudicating the legal rights or duties of a party. *See, e.g., Idaho State Bar Ass'n v. Idaho Pub. Util. Comm'n*, 102 Idaho 672, 637 P.2d 1168 (1981); *Weston v. Gritman Memorial Hosp.*, 99 Idaho 717, 587 P.2d 1252 (1978); *Merco. Const. Engineers v. Municipal Court*, 21 Cal.3d 724, 147 Cal.Rptr. 631, 581 P.2d 636 (1978); *Algonac Mfg. Co. v. United States*, 458 F.2d 1373, 198 Ct.Cl. 258, (1972); *Public Serv. Comm'n v. Hahn Transp. Inc.*, 253 Md. 571, 253 A.2d 845 (1969); *Denver Bar Ass'n v. Pub. Util. Comm'n*, 154 Colo. 273, 391 P.2d 467 (1964); *Shortz v. Farrell*, 327 Pa. 81, 193 A. 20 (1937); *In re Eastern Idaho Loan Co.*, 49 Idaho 280, 288 P. 157 (1930). *Cf., Hunt v. Maricopa Cty. Emp. Merit System Comm'n*, 127 Ariz. 259, 619 P.2d 1036 (1980). *See generally*, Annotation: Representation of another before state public utilities or service commission as involving practice of law, 13 A.L.R.3d 812 (1967); Annotation: Handling, preparing, presenting or trying workmen's compensation claims or cases as practice of law, 2 A.L.R.3d 724 (1965).

The regulation of the practice of law and the setting of minimum qualifications for admission to the bar are provinces of the judiciary, and ultimately of the Supreme Court, of this State, I.C. §§ 3–101—3–104; Idaho Const. art. 2, § 1; Idaho Const. art. 5, § 13. In the case of *Application of Kaufman*, 69 Idaho 297, 206 P.2d 528 (1949), this Court struck down an attempt by the State legislature to alter the requirements for admission to the practice of law in Idaho. The Court held that such legislative enactment constituted an impingement

upon the exclusive power of the judiciary to set standards of excellence for applicants to the bar. The Court stated, 69 Idaho at 315, 206 P.2d at 539:

"From a careful and comprehensive analysis of all the ... authorities, ... the following rules seem to be deducible: First, that the process of admitting to the bar comprehends fixing standards as to mental and scholastic qualifications and determining whether the applicant possesses such requirement; second, that the exercise thereof is a judicial function, inherent in the courts; and third, the legislature may enact valid laws in aid of such functions and may, if in furtherance thereof, fix minimum requirements, but in no event, maximum; and may not require the courts to admit on standards other than as accepted or established by the courts, and that any legislation which attempts to do so is an invasion of the judicial power and violative of the constitutional provisions establishing the separate branches of government and prohibiting the legislature from invading the judiciary."

▪▪▪ Thus, the final arbiter of who may practice law in this State is this Supreme Court. The legislature could not have delegated to the Industrial Commission the power—which the legislature itself lacks—to allow laypersons to represent parties in adjudicative proceedings. Only this Court could authorize corporate agents who are non-lawyers to appear on behalf of a corporation before the Industrial Commission. This we decline to do. Rather, we hold that, where an entity chooses to incorporate under the laws of this State and to thereby receive the benefits and privileges extended to corporations, it cannot, when convenient, ask the court to ignore its corporate status and extend to it the advantages to which an individual person is commonly entitled.

The holding of the commission is affirmed. Costs and attorney's fees to claimant, to be paid by Beco Corporation. Oth-erwise, no costs or attorney's fees on appeal.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ., concur.

BAKES, Justice, dissenting:

I dissent to the majority's holding that Mr. Beck could not represent his corporation, of which he is the sole shareholder, sole officer, and presumably the sole director, in the administrative proceeding before the Industrial Commission. I am surprised that the majority cites, as its lead authority to support its holding, the case of *Idaho State Bar v. IPUC*, 102 Idaho 672, 637 P.2d 1168 (1981). In *Idaho State Bar*, the Court specifically stated that proceedings before a state commission "are quasi-judicial, and often involve matters more administrative than judicial in nature, [and] some relaxation of the traditional rule against the practice of law by lay persons is appropriate." 102 Idaho at 676, 637 P.2d 1168. The Court ruled in that case that in a proceeding before a state commission the "representation of a sole proprietorship by the owner, or representation of a partnership by the partners, or *representation of a corporation ... by the officers of those entities,*" does *not* constitute the unlawful practice of law in Idaho. *Id.* at 676, 637 P.2d 1168.

As a result of the Court's decision today, you have one rule applying before the Public Utilities Commission and an entirely opposite rule for proceedings before the Industrial Commission. The Court does not explain why the sole owner and officer of a small family-held corporation can appear and represent the corporation before the Idaho Public Utilities Commission, but that same owner-officer cannot represent the same corporation before the Industrial Commission. There is no rational basis for that distinction, and the Court's ruling today places the small family-held incorporated business involved in a proceeding before the Industrial Commission at a distinct disadvantage when compared with other litigants before the Industrial Commission who may have the ability to represent

themselves, or can obtain free legal aid. Our decision in *Idaho State Bar v. IPUC, supra,* requires that this case be reversed and remanded to the Industrial Commission for a hearing in which Mr. Beck is allowed to represent his small family incorporated business, and to present evidence and cross examine witnesses. Basic fairness and due process require it.