757 P.2d 190

**MELODY'S KITCHEN, Employer Account No. 1262530, Employer–Appellant,**

v.

**Toni HARRIS, SSN: 526–76–1775, Claimant–Respondent,**

and

**State of Idaho, Department of Employment, Respondent.**

No. 16496.

Supreme Court of Idaho.

June 3, 1988.

Melody's Kitchen, Employer-appellant by George R. Sparks, pro se.

Jim Jones, Atty. Gen., and Roger T. Martindale (argued), Deputy Atty. Gen., Boise, for respondent State of Idaho, Dept. of Employment.

Toni Harris, claimant-respondent, did not participate.

BISTLINE, Justice.

George Sparks, with his wife Beth, owned and operated a sole proprietorship under the name of Melody's Kitchen. That entity prepared certain food products, primarily sandwiches and salads.

On October 3, 1985, the claimant, Toni Harris filed a claim for benefits with the Idaho Department of Employment, asserting that she was employed by Melody's Kitchen from October 11, 1984, to September 25, 1985, at which time she was discharged. The Department issued a status determination on October 25, 1985 which held that, even though the relationship might qualify for an independent contractor exemption pursuant to I.C. § 72–1316(d)(1) (Supp.1987), the claimant was nevertheless a "covered employee" because she was an agent-driver or commission-driver engaged in the distribution of certain specified food products for the employer in accordance with the terms of I.C. § 72–1316(d)(2)(A) (Supp.1987). That statute applies specifically to distribution of "meat products, vegetable products, fruit products, bakery products, beverages, or laundry or dry cleaning services...." Mr. Sparks appealed.

A hearing was scheduled before the appeals examiner, at which Mr. Sparks appeared without an attorney and the claimant appeared without an attorney. The decision of the appeals examiner was to affirm the status determination. Mr. Sparks, still *pro se*, appealed to the Industrial Commission where he requested a hearing.

The Commission reviewed the request but determined that the interests of justice did not require a hearing in which to present additional evidence. The Commission reasoned that it was not necessary in view of the appeals examiner's decision being based solely upon I.C. § 72–1316(d)(2)(A) which rendered the particular workers "covered employees" regardless of independent contractor status. On April 17, 1986, the Industrial Commission issued its own findings of fact and conclusions of law which generally concurred in the findings and conclusions of the appeals examiner. Melody's Kitchen appealed from the decision of the Industrial Commission, raising three issues:

(1) Did the claimant perform services in "covered employment" as an agent-driver or commission-driver within the provisions of I.C. § 72–1316?

(2) Did the appeals examiner deny Mr. Sparks due process in excluding further evidence which he wanted to offer?

(3) Did the Industrial Commission's denial of a hearing deny Mr. Sparks due process?

Our attention is first drawn to the Commission's refusal to conduct any hearing. This in turn brings our attention back to an examination of the proceedings which took place before the Department's appeals examiner. In approaching our review, we are naturally mindful of our very recent opinion of March 17, 1987, *Idaho Insulation and Window, Inc. v. Idaho Department of Employment*, 114 Idaho 584, 759 P.2d 875 (1987) (Rehearing granted August 26, 1987). We mentioned there that at the reported hearing before Nadine Brown, the Department's appeals examiner, Idaho Insulation was not represented by counsel, and no counsel of record appeared for the Department. We mentioned that the transcript showed a hearing which consisted of Mr. Briscoe's (employer's president and manager) testimony in response to questions by the appeals examiner. Mr. Briscoe was cross-examined by Jim Griffitts, a status examiner employed by the Department. On re-examining the record in that case, *we now observe that Mr. Griffitts, as a Department status examiner, had made the initial decision adverse to Idaho Insulation*, which was appealed. In fact, the

request for an appeal hearing was addressed to Mr. Griffitts.[1]

Our examination of the Melody's Kitchen hearing which was conducted by Mr. Burgoyne, Department appeals examiner, shows that the same Mr. Griffitts played a very substantial role in his cross-examination of Mr. Sparks. According to the index in the reporter's transcript, Mr. Griffitts cross-examined Mr. Sparks for 19 pages, which followed 25 pages of "direct" examination by the appeals examiner, who then examined Mr. Sparks for another ten pages on "redirect" after cross-examination by Mr. Griffitts.

We note that, at the outset of the hearing, Mr. Sparks was not offered any opportunity to present any testimony of his own volition, either orally or by reading a sworn statement of the facts which he wanted in evidence. He was given some slight opportunity only at the very conclusion of his second direct examination, at which time the following took place:

Q. Now, do you have, do you have employees that you acknowledge perform services in covered employment and that you pay taxes on?

A. Yes, we do.

Q. Okay. What kind of workers are these?

A. These are the ones that manufacture the product.

Q. Okay. Anything else I should know, Mr. Sparks? ... Anything else I should know?

A. Well, uh ... you mean, am I supposed to make my statement right now ... or questioning or anything or ...

Q. Just anything else at all, any other information you ought to consider in making a decision.

A. Oh, are you going to make a decision right now?

Q. No. I'm going to hear from Ms. Harris ...

A. Okay.

Q. ... and I'm also going to give these two people here an opportunity to question you, if they want to. But if there's any other information you think I ought to consider, this should be the time to give it to me.

A. No.

Q. Okay.

A. If I can maybe ...

Q. Well, if you think of something later, you can tell me.

A. I have something ...

Q. Sure. Mr. Griffitts, any questions?

JIM GRIFFITTS: Yes.

Tr., pp. 29–30. On cross-examination of Mr. Sparks by Mr. Griffitts, on many occasions, the appeals examiner interceded with questions as they occurred to him. Tr., pp. 33–39, 41–42, 44–47. At the conclusion of the cross-examination, the appeals examiner aptly remarked: "I interrupted Mr. Griffitts a lot but I didn't interrupt him *every* time I had a question."

This concession was fortified when the appeals examiner again took complete command of the interrogation of Mr. Sparks by what the transcript refers to as redirect examination of Mr. Sparks by the appeals examiner.

When the two Department personnel were through with Mr. Sparks, the appeals examiner did not again refer back to the point where Mr. Sparks was cut off when he got only so far as saying "I have something...." The appeals examiner also turned down Mr. Sparks' request to present the testimony of one of his salespeople who was similarly situated as the claimant:

---

1. The transcript consisted of 39 pages of examination of Mr. Briscoe by the appeals examiner, and 16 pages of cross-examination by Mr. Griffitts, during which the appeals examiner took over the examination in three instances, leaving it unclear whether many of the questions propounded to Mr. Briscoe were asked by the appeals examiner or by Mr. Griffitts. At the close of the Briscoe testimony, the appeals examiner made it obvious that she also considered Mr. Griffitts as an available *witness:*

EXAMINER: Mr. Griffitts, do you have any testimony to put on the record?

Q. I have no personal knowledge of the facts of the case. If there were any questions of a procedural nature that I could help clarify something, I'd be glad to.

Tr., p. 59.

A. No, I brought another self-employed.

Q. One of your salespeople?

A. That's correct.

Q. Okay. Would this testimony of a salesperson be to corroborate what you told me?

A. Yeah, it would ... more or less just ...

Q. Okay. If corroboration is needed, I'll hear her. And if it's not needed, I don't think I'll need to hear her. So, let me ask Ms. Harris some questions first and see if there are any disputes here about the evidence. If there aren't any, I probably don't need to hear any further witnesses. If there are some disputes, then I may. Ms. Harris, I'll swear you in now and take your testimony. Would you raise your right hand please?

Tr., p. 58. It is true that Mr. Sparks' witness was later allowed to be examined, but only after the appeals examiner and Mr. Griffitts had first led claimant Toni Harris through 33 pages of direct, redirect, cross and recross-examination. Mr. Sparks was given an opportunity at attempting his own cross-examination of the claimant, but only after Mr. Griffitts had the first opportunity, which was used by Mr. Griffitts to jointly peruse with Toni Harris the contents of Exhibit No. 7. This exhibit was a questionnaire document pertinent to the question at issue and had been prepared and submitted by Mr. Charles E. Orem (another employee of the Department), to Mr. Sparks for answering. The exchange between Mr. Griffitts and claimant Toni Harris consisted of her refuting by prepared statements the answers to ten prepared questions on the questionnaire—all of which had to do only with the independent contractor issue.

Mr. Griffitts in his capacity as status examiner, although he had already written in his decision letter to Mr. Sparks that liability for taxes was predicated on the basis of I.C. § 72–1316(d)(2),[2] was also quite willing to help in the case against Mr. Sparks on the grounds that the independent contractor exclusion from taxes would not be sustained by the evidence. Be that as it may, as discussed *infra*, the hearing before the appeals examiner did not at all purport to focus on establishing evidence that would go toward sustaining or defeating the applicability of I.C. § 72–1316(d)(2).

Because he nevertheless found liability on the basis of § 72–1316(d)(2), the appeals examiner concluded in his decision that it was not necessary to examine the issue of whether or not the (claimant and other) workers were independent contractors under the excluding provisions of I.C. § 72–1316(d)(1). But *that was the issue and the only issue upon which the hearing was conducted.* When he convened the hearing for taking testimony on the appeal, the examiner, apparently with the written notice thereof in his hands, said this:

EXAMINER: A notice of hearing was mailed to the parties in the case on December 31, 1985. And that notice shows the addresses for the parties.... And the notice said that *this hearing is to determine if the claimant and others similarly engaged performed services in covered employment, according to Section 72–13316(b)(1)*[3] of the Idaho Em-

2. Exhibit No. 8, the status examiner's determination, contains this language:
   While it appears the terms and conditions under which services were performed might meet the exclusion as provided for an independent contractor, the above section of law is controlling. That section is also contained in the federal unemployment tax act and was introduced in Idaho law in 1972. There appears to be no question that your sandwiches are meat and bakery products. Your salads, etc., are vegetable products. *Precedent cases* involving the sale of similar items by individuals engaged similar to Toni Harris have found the services to be in covered employ-

ment. Therefore, we have no alternative but to hold that the payments you made to Toni Harris and others similarly engaged are wages in covered employment reportable to and taxable by this Department.
Exhibit No. 8, p. 1. Whatever precedent cases the appeals examiner found as his authority remained an unrevealed secret.

3. We see here an obvious transcriptional error by the person typing from the tape. There is no § 13–316(*b*)(1), and § 13–316(*d*)(1) had to be what the examiner read and stated. It is beyond cavil that the notice of hearing did not make reference to I.C. § 72–1316(d)(2), and

ployment Security Law; and Department of Employment Rules 35.112 through 35.-113.03; if remuneration paid to the claimant was wages for unemployment insurance purposes, according to Section 72–1328(a) of the Idaho Employment Security Law. Are those the issues that should be decided, Mr. Sparks?

GEORGE SPARKS: Yes.

Tr., p. 2 (emphasis added).

When Mr. Sparks was allowed to make a statement on his own, that was the exact issue which he addressed, as best he could:

... finally, I'll give Mr. Sparks one more opportunity to give me his opinion, after having had a chance to hear them because he does have the burden of proof. So, you may go first, Mr. Sparks.

CLOSING STATEMENT

GEORGE R. SPARKS: Well, I, I feel it's just the way I've always thought. We've always conducted it as though they were self-employed. Except for Ms. Harris, all of them realize that they were self-employed, prior to even working the first day, that they were going to be independent contractors. We give them suggestions but we give them suggestions in a helpful way. We don't really designate what they do or what they should do, what time they should come in, what time they should leave. I think that ... I spoke to Mr. Oram, it was, it was considered that it was self-employment. so, I've just, I ... you know, up until this, a few months back .. I didn't even, when Toni filed for unemployment, I just didn't even put any weight to it because I didn't realize that there was a .. a clause in something like this and bring up the issue. I think, I still feel that the case should be ... I still feel as though we're still, the girls, or the sales people are still self-employed, and that's .. pretty much the way I feel about it.

Tr., pp. 129, 130.

In presenting as a witness one of the other salespersons, Ms. DuMars, Mr. Sparks was most obviously aware that she

would support his contentions on the issue being tried. Of this there can be no doubt, as exemplifed by the examiner's remarks when the claimant, Toni Harris, stated she had one other witness to back up her testimony:

EXAMINER: Ms. Harris, you had an additional witness. Was she someone who worked as a salesperson from Melody's Kitchen?

TONI HARRIS: Yes.

EXAMINER: Okay. Were you going to offer her to corroborate your testimony?

JIM GRIFFITTS: Yes.

EXAMINER: Okay. I don't really I think I need to hear that witness. Ms. DuMars is obviously of the opinion she's an independent contractor. But I note that on most points, although not all, when we get down to the day to day realities of how things are occurring, I don't see that much difference between what Ms. DuMars said and what Ms. Harris said. I see differences of opinion about whether "I had to do that," whether "I was instructed to do that," but as a practical matter, just as an example, on the route changes, while Ms. DuMars says, "I didn't have to tell about that I was doing that." And Ms. Harris is saying, "I told her because I thought I had to." the fact is, both were doing it. I also hear in this case, don't have to look at just what did happen, or what .. control the employer may have exercised, I also have to look and consider what rights the employer and the worker had, as opposed to each other. Those rights come out of the contractual relationship, if there is one. Those rights come out of certain practical matters, like who controls the equipment, the facilities to do the work and that sort of thing, the items necessary. So, I think I can make a fair decision in this case. And I think that I can adequately resolve the evidence in this case without hearing that additional witness and I'm inclined to do that because I don't think I need .. it's going to be inconvenient to continue the

more specifically did not make reference to

§ 72–1316(d)(2)(A).

matter without doing that. I think, under those circumstances, having heard all of the evidence, it's reasonable for me to issue a decision based on what I've heard....

Tr., pp. 127, 128.

Mr. Griffitts, who through being present and having not questioned the examiner's statement of the issue to be tried, when afforded the opportunity to do, still did not do so vigorously enough to excite any attention. His closing statement was this much, and no more:

> JIM GRIFFITTS: I think that the question still has to follow as to the specific services .. there is in the statute of agent salesperson selling these specific commodities and that the method of payment .. may hold some assistance in Mr. Sparks' ascertaining how much has been paid the workers. There just appears to be no "you and me" concern whether or not they are or are not independent contractors as called in the statutory "employer" definition.

Tr., p. 130.

The examiner's decision opened with a statement of not just the provisions of 72–1316(d)(1).[4,5]

The examiner then set forth four paragraphs setting out the department's own rules for determination of independent contractor, and one paragraph which set out the statutory determination of wages:

> Department of Employment Rules 35.-112 through 35.112,02 provide that for purposes of Section 72–1316(d)(1), *Idaho Code*, a worker is considered free from direction and control in the performance of his work when he cannot be summarily terminated or himself terminate during the progress of the work without resulting contractual liability or rights, and he cannot be directed in the details or method of his work but is responsible only for the result as designated by his contract.

> Department of Employment Rules 35.-113 through 35.113,02 provide that a worker is not considered free from direction and control when he can terminate or be terminated at will during the progress of the work without contractual liability or he can be directed as to the details and method of work under penalty of summary termination.

> Department of Employment Rule 35.-114 provides that for purpose of making determination under Section 72–1316(d), *Idaho Code*, and this regulation, the party alleging that summary termination by either party would result in contractual liability must present some evidence upon which to base such allegation.

> Department of Employment Rules 35.-115 through 35.115,03 provide that for purpose of Section 72–1316(d)(2), *Idaho Code*, the following are indications of a worker's independently established trade, occupation, profession, or business: he has authority to hire subordinates as his employees in performing the service; he owns or leases the major items of equipment used in performing the service; liability to either party would arise for peremptory termination of business relationship.

> Section 72–1328(a) of the Idaho Employment Security Law provides, in part, that the term "wages" means all remuneration for personal services from whatever source, including commissions and

---

**4.** Section 72–1316(d)(1) of the Idaho Employment Security Law provides, in part, that services performed by an individual for remuneration shall be covered employment unless it is shown (a) that the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact, and (b) that the worker is engaged in an independently established trade, occupation, profession, or business.

**5.** It also set out the excepting provisions of the next section:

Section 72–1316(d)(2) of the Idaho Employment Security Law provides, in part, that even though such individual meets the exemption of subsection (d)(1)(A) and (B) of this section but performs services as an agent-driver or commission-driver engaged in distributing meat products, vegetable products, fruit products, bakery products, beverages, or laundry or dry cleaning services for his principle, services performed shall be covered employment.

bonuses and the cash value of all remuneration in any medium other than cash. R., p. 2. Having done all of that, the examiner completely abandoned the enterprise of determining whether the claimant was an employee of Mr. Sparks, or an independent contractor. Under the topical heading of Conclusions the examiner found it unnecessary to determine whether or not the workers were independent contractors, and no such determination of the stated issue, read into the record at the outset from the Notice of Hearing, was made:

It is concluded that one who was an independent contractor under subsection (1) can be held to have been an agent and to have worked in covered employment under subsection (2) of Section 72–1316(d). Therefore, to decide this case, on the basis of subsection (2), *it is not necessary to examine whether or not the workers were independent contractors under subsection (1).*

R., p. 3 (emphasis added). The record which was forwarded to the Industrial Commission is part of the record before us, and the Commission also saw only a record which did not contain the Notice of Hearing from which the examiner read, and apparently did not chance to observe the opening recitals of the examiner's hearing where the sole issue to be tried was read into the record. The Commission ruled against Mr. Sparks' request for a hearing before the Commission, and hence there was none.

The opening paragraph of the Commission's written decision, on reviewing the final decision of the appeals examiner, contains the following observation:

In this case the Appeals Examiner made no determination that the individuals in question were employees rather than engaged as independent contractors or in self-employment. Rather, the appeals examiner based his decision on another provision of the Employment Security Law relating to agents.

R., 10–11.

This Court was faced with a similar situation in *White v. Idaho Forest Industries and Department of Employment*, 98 Idaho 784, 572 P.2d 887 (1977). In that case

the failure to fully state the issue to be heard was the Notice sent out by the Commission. Here, however, it appears that the Commission sent out no notice whatever. Mr. Sparks would learn that his request for a hearing was denied only when he received the Commission's written decision, a recital of which would serve to so inform him, "... the Commission concludes [sic, concluded] that no further hearing need be held. The matter will be decided upon review of the record of proceedings before the appeals examiner ..." R., p. 11. In this instance it was the appeals examiner who made a decision on an issue not stated in the Notice of Hearing which was sent to the involved parties. In the *White* case, we stated the due process requirement of Idaho Law:

Idaho case law, though it has developed in other contexts, is equally insistent that an administrative tribunal may not raise issues without first serving the affected party with fair notice and providing him with a full opportunity to meet the issue. *See, Intermountain Gas Co. v. Idaho Public Utilities Com'n*, 97 Idaho 113, 540 P.2d 775 (1975); *Washington Water Power Co. v. Idaho Public Utilities Com'n*, 84 Idaho 341, 372 P.2d 409 (1962). The order of the Industrial Commission, because it rests upon an issue of which the claimant had no fair notice, violates the due process requirements of this State's Constitution, Idaho Const. art 1, § 13, and must be reversed.

*White v. Idaho Forest Industries, supra*, at 786, 572 P.2d at 889. With slight changes, that principle is equally applicable to the Notice of Hearing which the Department of Employment itself sent out to the parties, of which Mr. Sparks was the principal person involved.

The decision of the Industrial Commission turned on the record made by the Department, and cannot stand; it must be, and is, reversed, as is also reversed and set aside the earlier decision of the Department's appeals examiner.

**334**

HUNTLEY and BAKES, JJ., concur.

DONALDSON, J., sat, but did not participate due to his untimely death.

SHEPARD, Chief Justice, dissenting.

It is my view that the only issue which need be addressed is whether the Industrial Commission erred in denying appellant Melody's Kitchen a hearing before the Commission, and I conclude that the Commission erred in denying such a hearing. It is further my view that the Industrial Commission merely placed its approval upon the administrative proceedings and decision of the Department of Employment. The appearance of essential fairness to the parties is of significance, and no sufficient reason has been articulated for a denial of a hearing before the Industrial Commission.

Hence, I would reverse and remand to the Industrial Commission with directions that a hearing be held.